# 24-859-cr

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

*Appellee,*

v.

ISZAYAH ROWSON,

*Defendant-Appellant.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF PURSUANT TO**
***ANDERS v. CALIFORNIA*, 386 U.S. 738 (1967)**

**JAY S. OVSIOVITCH**
Federal Public Defender's Office
Western District of New York
*Attorney for Defendant-Appellant*
28 East Main Street
Rochester, New York 14614
Telephone: (585) 263-6201

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................... iii

INTRODUCTION ........................................................................................ 1

JURISDICTIONAL STATEMENT ................................................................. 2

STATEMENT OF THE ISSUE PRESENTED ................................................. 3

COMBINED STATEMENT OF THE FACTS AND STATEMENT OF THE CASE ........ 4

SUMMARY OF THE ARGUMENT ................................................................. 10

THERE ARE NO NON-FRIVOLOUS ISSUES THAT CAN BE
RAISED ON APPEAL .................................................................................. 13

   I. Mr. Rowson specifically waived his right to appeal a sentence
     within or below a range of 181 to 211 months imprisonment. ...... 14

   II. There are no issues implicating rights that cannot be waived or
      were not waived. ............................................................................ 21

   III. Mr. Rowson's 168-months sentence is both procedurally and
       substantively reasonable. ............................................................... 35

     A. Mr. Rowson's 168-months sentence is procedurally
        reasonable. ................................................................................ 36

     B. Mr. Rowson's sentence is substantively reasonable. ............... 49

   IV. There could be adverse consequences if Mr. Rowson were to
       contest the plea. .......................................................................... 51

CONCLUSION ........................................................................................... 54

CERTIFICATE OF COMPLIANCE ................................................................ 56

ADDENDUM ................................................................................57

    18 U.S.C. § 1962. Prohibited activities.................................57

    18 U.S.C. § 924(c)(1)(A)(i). Penalties...................................58

AFFIRMATION OF SERVICE .........................................................59

TABLE OF AUTHORITIES

## Federal Cases

*Anders v. California*, 386 U.S. 738 (1967) ................................. 1, 2, 13, 54

*Brady v. United States*, 397 U.S. 742 (1970) ......................................... 15

*Campusano v. United States*, 442 F.3d 770 (2d Cir. 2006) ................... 14

*Ellis v. United States*, 356 U.S. 674 (1958) (per curiam)........................ 13

*Gall v. United States*, 552 U.S. 38 (2007) ............................................... 35

*McCarthy v. United States*, 394 U.S. 459 (1969) ................................... 24

*New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022)............. 5

*Penson v. Ohio*, 488 U.S. 75 (1988) ........................................................ 13

*United States v. Adams*, 955 F.3d 238 (2d Cir. 2020)............................. 24

*United States v. Arrous*, 320 F.3d 355 (2d Cir. 2003)............................. 13

*United States v. Booker*, 543 U.S. 220 (2005) ........................................ 35

*United States v. Burnett*, 989 F.2d 100 (2d Cir. 1993) ........................... 14

*United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008) (*en banc*)....... 35, 49

*United States v. Chu*, 714 F.3d 742 (2d Cir. 2013) (per curiam)............ 35

*United States v. Coston*, 737 F.3d 235 (2d Cir. 2013) (per curiam)........ 15

*United States v. Desnoyers*, 708 F.3d 378 (2d Cir. 2013)........................ 36

*United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010)............................. 49

iii

*United States v. Gonzalez*, 529 F.3d 94 (2d Cir. 2008) ...........................35

*United States v. Johnson*, 850 F.3d, 515 (2d Cir. 2017) ........................21

*United States v. Jones*, 100 F.4th 103 (2d Cir. 2024) ............................15

*McCarthy v. United States*, 394 U.S. 459 (1969) ....................................21

*United States v. Ojeda*, 946 F.3d 622 (2d Cir. 2020) .............................15

*United States v. Pattee*, 820 F.3d 496 (2d Cir. 2016) ............................23

*United States v. Pugh*, 945 F.3d 9 (2d Cir. 2019) ..................................37

*United States v. Rigas*, 583 F.3d 108 (2d Cir. 2009) ........................37, 49

*United States v. Rowson*, 652 F. Supp.3d 436 (E.D.N.Y. 2023) ..............6

*United States v. Ruiz*, 536 U.S. 622 (2002) ............................................15

*United States v. Sanchez*, 517 F.3d 651 (2d Cir. 2008) .........................35

*United States v. Sindima*, 488 F.3d 81 (2d Cir. 2007) ...........................36

*United States v. Torrellas*, 455 F.3d 96 (2d Cir. 2006) .........................24

*United States v. Whitley*, 503 F.3d 74 (2d Cir. 2007) (per curiam) ........14

## Federal Statutes

18 U.S.C. § 2 .......................................................................... passim

18 U.S.C. § 922(n) ................................................................... 4, 5

18 U.S.C. § 924(a)(1)(D) .......................................................... 4, 5

18 U.S.C. § 924(c)(1)(A)(i) ...................................................... passim

18 U.S.C. § 924(c)(1)(A)(ii) ........................................ 1, 3, 5, 10

18 U.S.C. § 924(c)(1)(A)(iii) ....................................... 1, 3, 5, 10

18 U.S.C. § 1959(a)(3) ....................................................... 4, 5

18 U.S.C. § 1959(a)(5) .......................................................... 5

18 U.S.C. § 1962 ................................................................ 57

18 U.S.C. § 1962(d) .................................................... passim

18 U.S.C. § 3553(a) .................................................... passim

18 U.S.C. § 3553(a)(2)(A) ................................................ 46

18 U.S.C. § 3553(a)(2)(B) ................................................ 46

18 U.S.C. § 3553(a)(2)(C) ................................................ 46

18 U.S.C. § 3742(a) ............................................................. 3

28 U.S.C. § 1291 ................................................................. 3

## Federal Rules

FED.R.CRIM.P. 11 ...................................................... passim

FED.R.CRIM.P. 11(b)(1) ................................. 11, 23, 24, 34

FED.R.CRIM.P. 11(b)(1)(A) ............................................ 24

FED.R.CRIM.P. 11(b)(1)(B) ............................................ 24

FED.R.CRIM.P. 11(b)(1)(C) ............................................ 25

v

FED.R.CRIM.P. 11(b)(1)(D) ............................................................. 25

FED.R.CRIM.P. 11(b)(1)(E) ............................................................. 25

FED.R.CRIM.P. 11(b)(1)(G) ............................................................. 27

FED.R.CRIM.P. 11(b)(1)(H) ............................................................. 28

FED.R.CRIM.P. 11(b)(1)(J) .............................................................. 30

FED.R.CRIM.P. 11(b)(1)(K) ............................................................. 30

FED.R.CRIM.P. 11(b)(1)(M) ............................................................. 30

FED.R.CRIM.P. 11(b)(1)(N) ............................................................. 33

FED.R.CRIM.P. 11(b)(1)(O) ............................................................. 33

FED.R.CRIM.P. 11(h) ...................................................................... 24

## United States Sentencing Guidelines

U.S.S.G. § 2A2.1(a)(1) ................................................................... 41

U.S.S.G. § 2A2.1(b)(1)(B) ....................................................... 38, 39, 41

U.S.S.G. § 2A2.2(a) ...................................................................... 39

U.S.S.G. § 2A2.2(a)(1) .............................................................. 38, 39

U.S.S.G. § 2A2.2(b)(2)(A) ............................................................. 39

U.S.S.G. § 2D1.1(a)(5) ............................................................. 39, 41

U.S.S.G. § 2D1.1(c)(17) ................................................................. 41

U.S.S.G. § 2E1.1(a)(2)...................................................................38, 39

U.S.S.G. § 2K2.4(b)......................................................................40, 42

U.S.S.G. § 3D1.2.........................................................................38, 42

U.S.S.G. § 3D1.4(a)...........................................................................40

U.S.S.G. § 3D1.4(b)...........................................................................40

U.S.S.G. § 3D1.4(c)...........................................................................40

U.S.S.G. § 3E1.1(a)...........................................................................40

U.S.S.G. § 3E1.1(b)...........................................................................40

## Other Authorities

FED. JUDICIAL CENTER, BENCHBOOK FOR U.S. DISTRICT COURT JUDGES, §
    2.01 (6th ed. Mar. 2013).........................................................21

## INTRODUCTION

Iszayah Rowson entered into an agreement with the government and pleaded guilty to counts one and three of a ten count superseding indictment charging him with a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and using and carried a firearm that was brandished and discharged during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2. Under the terms of the plea agreement, Mr. Rowson agreed to waive his right to appeal any sentence within or below a Guidelines range of 181 to 211 months imprisonment. The District Court sentenced Mr. Rowson to an aggregate sentence of 168 months imprisonment.

Mr. Rowson directed his attorney to file a notice of appeal. Given that he waived his right to appeal any sentence within or below a range of 181 to 211 months imprisonment, and that he was sentenced below that Guidelines range, Counsel moves to be relieved and, in support of that motion, files this brief pursuant to *Anders v. California*, 386 U.S. 738 (1967).

As addressed below, Counsel searched the record for any non-frivolous issue to raise on appeal and found the following: first, that Mr. Rowson knowingly and voluntarily waived his right to appeal a sentence within or below a range of 181 to 211 months imprisonment; second, that there are no issues implicating rights that cannot be waived or were not waived; third, that his 168-months aggregate sentence is both procedurally and substantively reasonable; and fourth, there will be adverse consequence if Mr. Rowson were to contest the plea.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction of this case by virtue of the indictment that was filed on June 2, 2022 (*see* Docket Item 11 (indictment), *see also* A-18 – A-35 (superseding indictment)).[1]

---

[1] References to "Docket Item ___, are to items filed in the District Court. References to "A-___" are to the page numbers in the Joint Appendix. The Joint Appendix was filed in this Court simultaneously with the *Anders* Brief.

2

Defendant-appellant Iszayah Rowson appeals from a judgment in this criminal case that was filed by United States District Court Judge Paul A. Engelmayer on March 25, 2024 (A-194 – A-200). Mr. Rowson timely filed his notice of appeal on April 3, 2024 (A-201).

The Court of Appeals has jurisdiction over appeals from final judgments of the District Court under 28 U.S.C. § 1291; the Court of Appeals has jurisdiction to hear appeals of a defendant's sentence under 18 U.S.C. § 3742(a).

## STATEMENT OF THE ISSUE PRESENTED

Mr. Rowson entered into an agreement with the government in which he would plead guilty to counts one and three of a ten count superseding indictment.[2] Specifically, he agreed to plead guilty to a racketeering conspiracy charge, in violation of 18 U.S.C. § 1962(d), and used and carried a firearm that was brandished and discharged during and in relation to a crime of violence, in violation of 18 U.S.C. §§

---

[2] Mr. Rowson was only charged in counts one, two, three, eight, nine, and ten.

3

924(c)(1)(A)(i), (ii), (iii), and 2. Under the terms of the plea agreement, Mr. Rowson agreed to waive his right to appeal any sentence within or below a Guidelines range of 181 to 211 months imprisonment. The District Court sentenced Mr. Rowson to 108-months imprisonment on count one, and 60-months imprisonment on count three, to be served consecutively to the sentence for count one, for an aggregate sentence of 168-months imprisonment. Given these facts, are there any non-frivolous issues to press on appeal?

### COMBINED STATEMENT OF THE FACTS AND STATEMENT OF THE CASE

On June 2, 2022, a grand jury in the Southern District of New York handed up a one count indictment charging Mr. Rowson with receipt of a firearm while under indictment for a felony, in violation of 18 U.S.C. §§ 922(n), 924(a)(1)(D), and 2 (Docket Item 11 (indictment)). In January of 2023, the government returned to the grand jury and a ten-count superseding indictment was returned charging Mr. Rowson with being part of a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (count one), being involved in violent crime in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(3), (a)(5), and 2 (count

4

two), using and carrying a firearm that was brandished and discharged during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2 (count three), violent crime in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(3), (a)(5), and 2 (count eight), use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2 (count nine), and receipt of a firearm while under indictment for a felony, in violation of 18 U.S.C. §§ 922(n), 924(a)(1)(D), and 2 (count ten) (A-18 – A-32 (superseding indictment)). Counts four through seven were levied against his codefendant, Michael Gant (A-25 – A-29).

Mr. Rowson moved to suppress a firearm that was seized on March 5, 2022, on the ground that the police lacked reasonable suspicion to stop the taxi in which he was a passenger, and to dismiss the indictment on the ground that the statute under which he was charged in the initial indictment, 18 U.S.C. § 922(n), constituted an unconstitutional restriction of the Second Amendment in light of *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) (Docket Items 32 & 33 at 4 – 10; *see also* Docket Item 11)). A hearing on Mr.

Rowson's motion was held (*see* Docket Item 39 (hearing transcript)) and, in a written opinion and order, the Court denied the motions (Docket Item 45). *See United States v. Rowson*, 652 F. Supp.3d 436 (E.D.N.Y. 2023). On the same day that the District Court's opinion and order was filed the superseding indictment was also filed (*see* A-18 – A-35).

On September 5, 2023, Mr. Rowson entered into an agreement with the government in which he would plead guilty to count one of the superseding indictment, charging him with participating in a racketeering conspiracy, and would also plead guilty to count three of the superseding indictment, charging him with using, carrying, and possessing a firearm in furtherance of a crime of violence (A-36 – A-43; A-45 – A-48). The parties agreed that Mr. Rowson would have a Guidelines sentencing range of 121 to 151 months imprisonment for Count one, and a Guideline range of 60-months imprisonment for Count three, to be served consecutively to the term of imprisonment for Count one (A-39; A-60; A-169). This gave him an aggregate sentencing range of 181 to 211 months imprisonment (A-39; A-60; A-169). As part of the agreement, Mr. Rowson agreed to waive his right to appeal any

6

sentence within or below a Guidelines range 181 to 211 months imprisonment (A-40; A-65 – A-66).

Mr. Rowson read from a statement in which he admitted to the elements of the offense (A-168 – A-169). After a short recess the hearing resumed and the Court noted the Guidelines range that it was considering, the sentencing factors set forth in 18 U.S.C. § 3553(a), and the need to impose a sentence that was sufficient but not greater than necessary to serve the purposes of sentencing (A-169 – A-170). Considering the just punishment factors, the Court determined that a substantial sentence was warranted (A-173). The Court also concluded that a substantial sentence was needed to promote both general deterrence and specific deterrence (A-173 – A-175).

After discussing the points that favored a "substantial sentence," the Court considered factors in Mr. Rowson's favor. This included Mr. Rowson accepting responsibility by pleading guilty to serious crimes (A-176). The Court was also moved by Mr. Rowson's letter, and the remarks he made in Court (A-176 – A-177). This included the fact that

7

Mr. Rowson apologized to the people he affected, including the victims of is codefendant (A-177). The Court addressed Mr. Rowson's history and characteristics, particularly the environment in which he was raised that "made it harder to succeed in our world, such as growing up in a single parent home that struggled financially, a neighborhood that was infested with gangs and violence, and the effect of losing people to whom he was close (A-178). Not accepting these factors as an excuse, the Court thought his background helped explain Mr. Rowson's life choices (A-179). The Court also read letters submitted in support of Mr. Rowson and addressed the supporters who attended the hearing (A-180 - A-182). In addition, the Court was encouraged by the programs Mr. Rowson completed while he was in pretrial custody (A-183). The Court saw these as "signs . . . of the greater maturity that this prosecution has brought about" (A-183).

Additionally, the Court took into consideration the fact that Mr. Rowson had been detained for "some 24 months or so" at Brooklyn MDC (A-183 – A-184). The Court recognized that conditions there "are simply unacceptable," and that "time in custody is far more grueling than

8

Congress or the Sentencing Commission ever could have anticipated or intended. A day in custody there exacts more punishment than a day in the conditions of confinement in which federal prisoners elsewhere are generally held" (A-183).

When imposing sentence, the Court stated that,

> but for the factor of Mr. Rowson having spent two years in the MDC and but for the mitigating facts about Mr. Rowson that I reviewed earlier, by which I mean his youth and lack of a criminal record and the various challenges he was presented with, a sentence well above the bottom of the guideline range would very clearly be in order here.

(A-185). Taking these factors into consideration, the Court imposed a 168-months sentence of imprisonment (A-187). The sentence is based on a 108-months sentence for count one, to be followed by a 60-months consecutive sentence for count three (A-187). This is to be followed by a three-year term of supervised release on count one, and a five-years term of supervised release on count three, those terms to be served concurrently (A-187 – A-188). The Court also imposed the special conditions of supervised recommended by the probation department,

9

and incorporated them by reference, and only briefly summarized them on the record (A-188 – A-190). The remaining open counts against Mr. Rowson were dismissed (A-190).

Mr. Rowson timely filed his notice of appeal (A-201).

## SUMMARY OF THE ARGUMENT

After examining the record, defense counsel has determined that there are no non-frivolous issues to raise on appeal. Mr. Rowson entered into an agreement with the government and pleaded guilty to counts one and three of a ten count superseding indictment charging him with a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and using and carrying a firearm that was brandished and discharged during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2. Under the terms of the plea agreement, Mr. Rowson waived his right to appeal any sentence within or below a Guidelines range of 181 to 211 months imprisonment. The District Court sentenced Mr. Rowson to an aggregate sentence of 168 months imprisonment.

10

Appellate waivers that are knowingly and voluntarily entered are presumptively enforceable. The record demonstrates that Mr. Rowson knowingly and voluntarily waived his right to appeal. When taking his plea Mr. Rowson was given the opportunity to raise any questions he may have had. He was also given the opportunity to not plead guilty and go to trial. Additionally, Mr. Rowson indicated that he reviewed the plea agreement on his own and with his attorney.

The District Court followed the requirements of FED.R.CRIM.P. 11. As such, the plea was knowingly and voluntarily made. Specifically, the Court addressed each factor set forth in Rule 11(b)(1). Significant portions of the plea agreement were reviewed on the record, including a discussion of the rights Mr. Rowson was waiving. The Court repeatedly asked him whether he understood what it was explaining. As such, Mr. Rowson was aware of the rights that he would be waiving.

The 168-months sentence of imprisonment is both procedurally and substantively reasonable. After considering the Guidelines range

set forth in the PSR and the range set forth in the plea agreement, which was lower than that in the PSR, the Court adopted the Guidelines range set forth in the plea agreement, finding it "to be among the viable approaches." When considering the § 3553(a) factors, the Court determined that Mr. Rowson's offense "required a substantial sentence." Nonetheless, after considering the mitigating factors, including Mr. Rowson's acceptance of responsibility and the fact that his pretrial detention was spent at MDC Brooklyn, the Court imposed a below Guidelines sentence. The 168-months sentence is both procedurally and substantively reasonable.

Finally, Mr. Rowson could face adverse consequences if he were to successfully challenge the validity of his plea agreement and then unsuccessfully went to trial. The statutory maximum sentence for count one is 20 years imprisonment. The sentence for count three must be served consecutively to any other sentence. The aggregate sentence Mr. Rowson received for both counts one and three is below the statutory maximum sentence. If he were to unsuccessfully go to trial, he most likely would receive a much harsher sentence well beyond the sentence

the District Court imposed. And that is not considering the possibility that the government would seek to reindict Mr. Rowson on the withdrawn charges.

Accordingly, there are no non-frivolous issues to press on appeal.

## THERE ARE NO NON-FRIVOLOUS ISSUES THAT CAN BE RAISED ON APPEAL

Under *Anders v. California*, counsel may seek to be removed "[i]f counsel is convinced, after conscientious investigation, that the appeal is frivolous." 386 U.S. 738, 741 (1967) (quoting *Ellis v. United States*, 356 U.S. 674, 675 (1958) (per curiam)). However, "[i]n support of the motion, defense counsel must supply a brief identifying by record references any issues that have at least arguable merit supported by legal authority and explain why they are frivolous. *United States v. Arrous*, 320 F.3d 355, 358 (2d Cir. 2003); *see also Penson v. Ohio*, 488 U.S. 75, 81 n.4 (1988) (noting that, "simply putting pen to paper can often shed new light on what may at first appear to be an open-and-shut issue").

13

In cases where the defendant has waived his right to appeal, defense counsel must address the following: (1) whether the plea and the plea waiver was knowingly and voluntarily made; (2) whether it would be against the defendant's interest to contest the plea; (3) whether there are any issues implicating rights that cannot be waived, or were not waived; and (4) whether the sentence is reasonable. *Campusano v. United States*, 442 F.3d 770, 774 (2d Cir. 2006); *United States v. Whitley*, 503 F.3d 74, 76-77 (2d Cir. 2007) (per curiam). The reviewing court "must be satisfied that counsel has diligently searched the record for any arguable meritorious issue in support of his client's appeal," and "must be satisfied that defense counsel's declaration that the appeal would be frivolous is, in fact, legally correct." *United States v. Burnett*, 989 F.2d 100, 104 (2d Cir. 1993). In Mr. Rowson's case, defense counsel has searched the record for any non-frivolous issues and found that none exist.

## I. Mr. Rowson specifically waived his right to appeal a sentence within or below a range of 181 to 211 months imprisonment.

A knowing and voluntarily waiver of a right to appeal a sentence within an agreed upon guidelines range is presumptively enforceable.

14

*See e.g., United States v. Jones*, 100 F.4th 103, 109 (2d Cir. 2024);

*United States v. Ojeda*, 946 F.3d 622, 629 (2d Cir. 2020). That is, the

appellate waiver must be based on the defendant's consent, and the

waiver must be an "intelligent act[ ] done with sufficient awareness of

the relevant circumstances and likely consequences." *Brady v. United*

*States*, 397 U.S. 742, 748 (1970); *see also United States v. Ruiz*, 536 U.S.

622, 629 (2002) (quoting *Brady*); *United States v. Coston*, 737 F.3d 235,

237 (2d Cir. 2013) (per curiam) (discussing the requirements for

enforcing an appellate waiver). Having reviewed the plea agreement

with counsel, having read the plea agreement on his own, and having

the Court address the appellate waiver at the plea hearing, Mr. Rowson

knowingly and voluntarily entered into the plea agreement and waived

his right to appeal any sentence within or below a sentencing range of

181 to 211 months imprisonment.

During the plea hearing the District Court determined that Mr.

Rowson understood English, was not under the influence of drugs or

alcohol, and understood what was happening during the proceeding (A-

47 – A-49). Upon further questioning, the Court learned that Mr.

15

Rowson conferred with counsel, discussing the charges, the plea, and

consequences of entering the plea (A-50; A-53). The Court also discussed

with Mr. Rowson the rights he would be waiving by pleading guilty, and

reminded him that, while they were going through the process, he could

still change his mind and proceed to trial (A-50 – A-52). After

determining that Mr. Rowson understood that he was pleading guilty to

count one and a lesser included offense within count three, the Court

had the government summarize the key terms of the plea agreement (A-

54 – A-56).

Following the summary, the Court asked Mr. Rowson whether he

understood that the maximum possible penalty for count one was 20

years imprisonment, and the possible maximum penalty for count three

was life imprisonment (A-56). The Court also asked him whether he

understood that count three imposes a mandatory five-year sentence

that needed to be imposed consecutively to any other sentence (A-56).

Mr. Rowson indicated that he understood (A-56). This was followed by

an explanation of the possible fine that could be imposed, and the term

16

of supervised release that could be imposed (A-57 – A-58). Again, Mr. Rowson said he understood (A-57 – A-58).

After determining that Mr. Rowson spoke with his attorneys about the sentencing Guidelines, and the other factors involved in determining the sentence, the Court reviewed the Guidelines range set forth in the plea agreement, along with the fact that the Court was not bound by the recommended aggregate Guidelines range of 181 to 211 months imprisonment (A-59 – A-60). Once again, Mr. Rowson indicated he understood (A-60).

The Court explained that no one can give Mr. Rowson any assurance as to what his sentence might be and said that the Court will not make any sentencing determination until after it receives the PSR and the sentencing submissions from the parties (A-61). Mr. Rowson said he understood (A-61). Mr. Rowson also said he understood that he would not be able to withdraw his guilty plea if his sentence was different from what expected (A-61 – A-62).

17

In response to the Court's query, Mr. Rowson indicated that he was not threatened or forced in any way to plead guilty (A-62). He also indicated that it was his signature on the plea agreement that was given to the Court, and that he read the agreement and discussed it with his attorneys before signing it (A-63). He also indicated that he understood the agreement before signing it (A-63). At the Court's request, the government then summarized the key terms of the plea agreement (A-64 – A-66). In response to the Court's query Mr. Rowson stated that he heard and understood the key terms of the plea agreement (A-66).

The Court then highlighted one specific portion of the plea agreement:

> Do you understand that under the agreement, you're giving up your right to appeal or otherwise challenge your sentence so long as I don't sentence you above the 211 months' imprisonment? Do you understand that?

(A-66). Mr. Rowson replied "yes" (A-66). The Court questioned the government whether Mr. Rowson was also waiving his right to appeal the pretrial litigation related to count 10 (A-66 – A-67). This related to

18

the Court's denial of a suppression motion. The Court believed that,
given the plea, the "ruling is . . . effectively irrelevant" (A-67). The
government agreed that the issue is covered by the appellate waiver,
and that it will move to dismiss count 10 (A-67). The government also
stated that the gun referenced in count 10 is not part of the charges set
forth in count one (A-68). Defense counsel agreed that the Court's
decision had no bearing on the guilty plea (A-68).

After reading a statement explaining why he was guilty, Mr.
Rowson said that he was voluntarily pleading guilty and doing so under
his own free will (A-70 – A-71. The Court accepted the guilty plea,
finding that it was made voluntarily and intelligently:

```
            THE COURT:  Mr. Rowson, because you acknowledge --
you've acknowledged that you are, in fact, guilty as charged in
the indictment, and as -- both in terms of Count One and the
lesser-included offense within the scope of Count Three;
because I'm satisfied that you know of your rights, including
your right to go to trial; because I'm satisfied that you're
aware of the consequences of your guilty plea, including the
sentence that may be imposed; and because I find that you're
voluntarily pleading guilty, I accept your guilty plea and
enter a judgment of guilty on the two counts to which you've
pled guilty.
```

(A-74).


As part of his guilty plea, Mr. Rowson waived his right to appeal
any sentence within or below a Guidelines range of 181 to 211 months
imprisonment. The record shows that his plea was entered into
voluntarily and intelligently. He was sentenced to 108-months
imprisonment for count one, and 60-months imprisonment for count
two, to be served consecutively to the 108-months sentence, giving him
an aggregate sentence of 168-months imprisonment. This sentence is
below the Guidelines range of 181 to 211 months imprisonment.

20

Accordingly, Mr. Rowson waived his right to appeal his 168 months sentence.

## II. There are no issues implicating rights that cannot be waived or were not waived.

Defense counsel has reviewed the record and determined that there are no issues implicating rights that cannot be waived or were not waived. In taking Mr. Rowson's plea, the District Court followed the requirements of FED.R.CRIM.P. 11. Rule 11 sets forth the procedural requirements for how a plea must be received in the District Court. *See generally* FED. JUDICIAL CENTER, BENCHBOOK FOR U.S. DISTRICT COURT JUDGES, § 2.01 (6th ed. Mar. 2013) (addressing pleas of guilty or *nolo contendere*). Rule 11's requirements ensure that a guilty plea is knowingly and voluntarily made, and that there is a factual basis for the plea. *See McCarthy v. United States*, 394 U.S. 459, 466-467 (1969); *United States v. Johnson*, 850 F.3d, 515, 521 (2d Cir. 2017).

Rule 11 requires the Court accepting a plea to advise and question a defendant on the following:

21

(A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;

(B) the right to plead not guilty, or having already so pleaded, to persist in that plea;

(C) the right to a jury trial;

(D) the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and at every other stage of the proceeding;

(E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;

(F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;

(G) the nature of each charge to which the defendant is pleading;

(H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;

(I) any mandatory minimum penalty;

(J) any applicable forfeiture;

(K) the court's authority to order restitution;

(L) the court's obligation to impose a special assessment;

(M) in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a);

(N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence; and

(O) that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

FED.R.CRIM.P. 11(b)(1). While this Circuit strictly adheres to the requirements of Rule 11, *see, e.g., United States v. Pattee*, 820 F.3d 496, 503 (2d Cir. 2016), the Court does not dictate the how the plea is taken.

23

*United States v. Torrellas*, 455 F.3d 96, 102-103 (2d Cir. 2006) (quoting *McCarthy v. United States*, 394 U.S. 459, 467 n.20 (1969) (explaining that, inquires under Rule 11, "matters of reality, and not mere ritual, should be controlling."). Thus, any variance from Rule 11's requirements is harmless error if it does not affect a defendant's substantial rights. FED.R.CRIM.P. 11(h); *United States v. Adams*, 955 F.3d 238, 245 (2d Cir. 2020) (quoting Rule 11).

It is clear from the record that Mr. Rowson's plea hearing fully satisfied Rule 11(b)(1)'s requirements. After he was sworn in, the Court informed Mr. Rowson that, if he answered any of the Court's questions falsely, his answer could be used against him in another prosecution for perjury (A-48). This fulfilled the requirement of Rule (b)(1)(A). Mr. Rowson stated that he understood this (A-48). As to Rule 11(b)(1)(B), The Court informed Mr. Rowson that he could change his mind, plead not guilty and proceed to trial (A-52). Again, Mr. Rowson indicated that he understood what the Court told him (A-52). Along with explaining to Mr. Rowson that he would be giving up the right to a jury trial, the

24

Court did tell him that he had a right to a trial by jury (A-51 – A-52).
The Court also explained that,

> THE COURT: At that trial, you will be presumed to be
> innocent, and the government would be required to prove you
> guilty by competent evidence and beyond a reasonable doubt
> before you could be found guilty. You would not have to prove
> that you were innocent. And a jury| of 12 people would have to
> agree unanimously that you were guilty.

(A-51). This met the requirements of Rule 11(b)(1)(C).

Rule 11(b)(1)(D) and (E)'s requirements were met when the Court
told Mr. Rowson that, he would be giving up these rights if he entered a
guilty plea (A-50):

> At that trial and at every stage of your
> case, you've be entitled to be represented by an attorney. And
> if you could not afford one, one would be appointed to
> represent you free of charge.

(A-51). The Court continued,

```
            During a trial, the government -- the
witnesses for the government would have to come to court and
testify in your presence; and your lawyer could cross-examine
the witnesses for the government, object to evidence offered by
the government and, if you desired, issue subpoenas, offer
evidence, and compel witnesses to testify on your behalf.
```

(A-51). Once again, Mr. Rowson acknowledged that he understood the Court's explanation of his rights (A-51). And, as already mentioned, the Court told Mr. Rowson that he would be giving up his rights if he were to plead guilty (A-50).

As to the nature of each charge, after telling Mr. Rowson that he was pleading to participating in a racketeering conspiracy (count one) as well as a lesser-included offense of using, carrying, and possessing a firearm in connection with a crime of violence (count three), the Court had the government set out the elements of the two offenses (A-53 – A-55). The Court also had the government clarify that Mr. Rowson was not pleading guilty to the substantive offense set forth in count two, but that he was admitting to using or carrying the firearm in connection

with that offense (A-55). This met the requirements of informing Mr.

Rowson of the nature of each charge as required by Rule 11(b)(1)(G).


The Court next reviewed the maximum and minimum charges of

counts one and three, and the minimum penalty:

> THE COURT:  Do you understand that the maximum
> possible penalty in terms of imprisonment on Count Three is
> life imprisonment?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Do you understand that Count Three also
> imposes a mandatory five-year sentence which needs to be
> imposed consecutive to any other sentence?
>
>
> THE COURT:  All right.
>
> And so do you understand that the maximum possible
> penalty in this case would be effectively life imprisonment?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  All right.
>
> And do you understand that the Court is required to

```
run the sentence on Count Three — at least five years of it —
consecutive to the sentence of Count One; and that the Court
has the authority to run the entire sentence on Count Three
consecutive to the sentence on Count One?

        THE DEFENDANT: Yes.
```

(A-56 – A-57). The Court then explained the possibility of a fine being imposed:

```
        As to the fine, do you understand that the maximum
fine for each count is the greatest of $250,000, twice the
gross pecuniary gain derived from the offense, or twice the
gross pecuniary loss to people other than you resulting from
the offense?

        THE DEFENDANT: Yes.
```

(A-57). The Court also explained the special assessment:

```
        THE COURT: You'll also be required to pay a mandatory
$100 special assessment on each of the two counts, that is, for
a total of $200. Do you understand that?

        THE DEFENDANT: Yes.
```

(A-58). And, as required by Rule 11 (b)(1)(H), the Court explained the term of supervised release to Mr. Rowson:

28

THE COURT:  Do you understand that?  All right.

Do you understand that as to supervised release, the maximum possible term on Count One is three years, and on Count Three is five years?

THE DEFENDANT:  Yes.

THE COURT:  "Supervised release" means that you will be subject to monitoring when you are released from prison. There are terms of supervised release with which a person must comply.  If you don't comply with them, you can be returned to prison without a jury trial for all or part of the term of supervised release imposed by the Court.

Under those circumstances, you would not be given any credit towards that term for the time you had served in prison as a result of your sentence for this crime, nor would you necessarily be given any credit towards that term for any time you had spent on post-release supervision.

Do you understand that?

THE DEFENDANT:  Yes.

(A-57 – A-58).

The indictment contained a forfeiture allegation that pertained to count one (A-32 – A-33). As set forth in the plea agreement,

29

Mr. Rowson admitted to this allegation and agreed to forfeit "a sum of money representing the proceeds traceable to the commission of said offense" (A-37). This was referenced by the government, at the Court's request, during the plea hearing (A-64). The plea agreement also stated that Mr. Rowson agreed to make restitution in an amount ordered by the Court (A-37). The Court informed Mr. Rowson that he might be required to pay restitution to any person injured by his conduct (A-58). The government also noted this when addressing the key terms of the plea agreement (A-64). This met the requirements of Rule 11(b)(1)(J) & (K).

Rule 11 (b)(1)(M) requires the Court to explain its role in determining the sentence, and its obligation to calculate the Guidelines range, to consider the Guidelines range, and to consider possible departures as well as the sentencing factors under § 3553(a). The Court explained to Mr. Rowson that it had to consider the sentencing Guidelines and told him that it would not be able to determine the Guidelines range until after the PSR was prepared and after he, his attorney, and the government had a chance to challenge any facts

contained within the PSR (A-59). The Court then reviewed the

Guidelines range set forth in the plea agreement and explained "that

the parties' agreement as to what the sentencing guidelines recommend

is not binding on the probation department and it's not binding on the

Court" (A-60). Mr. Rowson indicated his understanding (A-60). The

Court continued:

> Do you understand that even after the Court has
> determined what guideline range does apply to your case, the
> Court has the discretion under the current law to impose a
> sentence that is higher or lower than the one| suggested by the
> guidelines?
>
> THE DEFENDANT:  Yes.

(A-60). The Court also explained that it was not possible to predict what

his final sentence would be:

No one, not your attorney, not the government's
attorney, no one can give you any assurance of what your
sentence will be, because I'm going to decide your sentence,
and I'm not going to do that now and I really can't do that
now.  Instead, I'm going to wait until I receive the probation
department's presentence report, I'm going to wait until I
receive what I know will be very thoughtful sentencing
submissions from the defense and from the government.  I'm
going to study those materials carefully, I'm going to make my
own independent assessment of what the sentencing guidelines
recommend.  Most of all, I'm going to determine what a just and
a reasonable sentence is for you based on all of the factors
contained in the sentencing statute which is known as Section
3553(a).

Do you understand all that?

THE DEFENDANT:  Yes.

(A-61).

The appellate waiver was also reviewed at the plea hearing (A-65
– A-68). The government mentioned Mr. Rowson's limited appellate
rights when reviewing the key terms of the plea agreement:

> As part of the plea agreement, the defendant is also
> agreeing that his ability to appeal is limited. What that
> means is that if he is sentenced within the stipulated
> guidelines range, then he is forfeiting his right to appeal if
> his sentence is within the guidelines range and if the fine
> that is imposed is also within the guidelines range as
> stipulated to on page 4.

(A-65). The Court thought this point was significant enough to return to it:

> THE COURT: I just want to highlight one in particular
> for you.
>
> Do you understand that under the agreement, you're
> giving up your right to appeal or otherwise challenge your
> sentence so long as I don't sentence you above the 211 months'
> imprisonment? Do you understand that?
>
> THE DEFENDANT: Yes.

Thus, the Court fulfilled the requirements of Rule FED.R.CRIM.P. 11(b)(1)(N).

The plea hearing also addressed the possible collateral affects addressed by Rule 11(b)(1)(O). Mr. Rowson did tell the Court he was a

33

citizen (A-59). That said, when reviewing the key terms of the plea agreement the government still addressed the possibility of removal from the United States in the event it was found that he is not a citizen:

```
        The defendant also is, as part of the plea agreement,
agreeing -- acknowledging that he -- if he is not a citizen --
I understand the defendant says that he is a citizen.  But if
he is not a citizen, that his guilty plea and conviction makes
it very likely the defendant may be removed from the United
States.
```

(A-65 – A-66).

The record clearly demonstrates that, at the plea hearing, Mr. Rowson was advised of the rights that he would be waiving and that there were no rights that could not be waived or were not waived. The Court did this by ensuring that it met the requirements of Rule 11(b)(1). The Court subsequently found that Mr. Rowson knew his rights and was aware of the consequences of his guilty plea (A-74).

Accordingly, there are no issues implicating rights that cannot be waived or were not waived.

34

### III.  Mr. Rowson's 168-months sentence is both procedurally and substantively reasonable.

Sentences imposed by the District Court are reviewed for reasonableness. *Gall v. United States*, 552 U.S. 38, 46-47 (2007); *United States v. Booker*, 543 U.S. 220, 261-62 (2005); *United States v. Chu*, 714 F.3d 742, 746 (2d Cir. 2013) (per curiam). Reviewing a sentence for reasonableness is akin to reviewing for abuse of discretion. *United States v. Cavera*, 550 F.3d 180, 187 (2d Cir. 2008) (*en banc*); *Chu*, 714 F.3d at 746-747. Reasonableness has two separate components, procedural reasonableness, which addresses how the Court arrived at the sentence, and substantive reasonableness, which addresses the length of the sentence. *Chu*, 714 F.3d at 746; *United States v. Gonzalez*, 529 F.3d 94, 97 (2d Cir. 2008).

Procedural reasonableness requires a determination as to whether the sentencing court "selected a sentence in violation of applicable law or committed an error of law in the course of exercising discretion." *United States v. Sanchez*, 517 F.3d 651, 661 (2d Cir. 2008) (citation omitted); *see also United States v. Desnoyers*, 708 F.3d 378, 385 (2d Cir.

35

2013) (explaining when procedural error occurs). A sentencing court commits a procedural error, for example, when it fails to calculate the Guidelines range, calculates it improperly, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, or fails to explain the chosen sentence. *Chu*,714 F.3d at 746 (citations omitted). When evaluating substantive reasonableness, the Court looks to the length of the sentence, "focusing . . . on the district court's explanation of its sentence in light of the factors detailed in 18 U.S.C. § 3553(a)." *United States v. Sindima*, 488 F.3d 81, 84 (2d Cir. 2007). The record shows that Mr. Rowson's 168-months sentence is both procedurally and substantively reasonable.

## A.  Mr. Rowson's 168-months sentence is procedurally reasonable.

When sentencing a criminal defendant, the District Court must address the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote
respect for the law, and to provide just punishment for
the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the
defendant; and

(D) to provide the defendant with needed educational or
vocational training, medical care, or other correctional
treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [by
the sentencing guidelines, including departure motions].

18 U.S.C. § 3553(a). When meeting the requirements of § 3553(a), the

sentencing court is not required to "parse every sentencing factor

individually or address in writing each of [the] defendan[t's] sentencing

arguments." *United States v. Rigas*, 583 F.3d 108, 119 (2d Cir. 2009);

*see also United States v. Pugh*, 945 F.3d 9, 24 (2d Cir. 2019) (addressing

the § 3553(a) factors). The record in Mr. Rowson's case demonstrates

that the District Court followed § 3553(a)'s procedural requirements

when imposing the 168-months sentence.

37

A PSR was prepared prior to sentencing. In calculating the Guidelines range for count one, the underlying offenses were divided into six different groups, in accordance with U.S.S.G. § 3D1.2, based on four attempted murders that occurred on June 20, 2020, a shooting on December 13, 2020, and a narcotics conspiracy (PSR ¶ 39). Group 1, which addressed victim 1 of the June 20 attempted murder, established an adjusted offense level of 35, based on a base offense level of 33, pursuant to U.S.S.G. §§ 2E1.1(a)(2) & 2A2.2(a)(1), and a two-level increase because the victim sustained a serious bodily injury, through the application of § 2A2.1(b)(1)(B) (PSR ¶¶ 41, 42, & 45). Group 2, which addressed victim 2 of the June 20 attempted murder, established an adjusted offense level of 35, based on a base offense level of 33, pursuant to U.S.S.G. §§ 2E1.1(a)(2) & 2A2.2(a)(1), and a two-level increase because the victim sustained a serious bodily injury, through the application of § 2A2.1(b)(1)(B) (PSR ¶¶ 47, 48, & 52). Group 3, which addressed victim 3 of the June 20 attempted murder, established an adjusted offense level of 35, based on a base offense level of 33, pursuant to U.S.S.G. §§ 2E1.1(a)(2) & 2A2.2(a)(1), and a two-level

38

increase because the victim sustained a serious bodily injury, through the application of § 2A2.1(b)(1)(B) (PSR ¶¶ 53, 54, & 58). Group 4, which addressed victim 4 of the June 20 attempted murder, established an adjusted offense level of 35, based on a base offense level of 33, pursuant to U.S.S.G. §§ 2E1.1(a)(2) & 2A2.2(a)(1), and a two-level increase because the victim sustained a serious bodily injury, through the application of § 2A2.1(b)(1)(B) (PSR ¶¶ 59, 60, & 64).

Group 5, which addressed the victim of the December 13 assault, established an adjusted offense level of 14, starting with a base offense level of 14, pursuant to §§ 2E1.1(a)(2) & 2A2.2(a), and increasing five-levels because a firearm was discharged, in accordance with § 2A2.2(b)(2)(A). Group 6, which addressed the narcotics conspiracy, had a base offense level of 6, in accordance with U.S.S.G. § 2D1.1(a)(5), because it involved less than one kilogram of marijuana (PSR ¶ 71). The adjusted offense level remained at 6 because no adjustments were applied (PSR ¶ 76).

Applying §§ 3D1.4(a), 3D1.4(b), and (c), one unit was assigned to Group 1, Group 2, Group 3, and Group 4 (PSR ¶77). No units were assigned to Groups 5 and 6 (PSR ¶77). This gave Mr. Rowson 4 units, that were added to the adjusted offense levels, giving him a combined offense level of 39 for count 1 (PSR ¶¶ 78-80). The PSR also determined that Mr. Rowson should have his offense level reduced by three levels for acceptance of responsibility through the application of §§ 3E1.1(a) & (b) (PSR ¶¶ 82-83). This gave Mr. Rowson a total offense level of 36 for count 1 (PSR ¶ 84).

Count 3 carries a mandatory minimum sentence of five-years imprisonment. *See* 18 U.S.C. § 924(c)(1)(A)(i). through the application of U.S.S.G. § 2K2.4(b), the Guidelines sentence is the minimum term of imprisonment (PSR ¶ 40).

In preparing the PSR, it was determined that Mr. Rowson was a criminal history category I (PSR ¶ 88). With a total offense level of 36, and a criminal history category of I, Probation determined that Mr.

40

Rowson had a Guidelines range of 188 to 235 months imprisonment for count 1 (PSR ¶ 120). This was to be followed by a 60-months consecutive sentence for count 3, giving him an aggregate sentencing range of 248 to 295 months imprisonment (PSR ¶ 120).

The Guidelines calculations in the PSR differed from those in the plea agreement. The parties agreed that Mr. Rowson had an aggregate sentencing range of 181 to 211 months imprisonment (A-38). The parties reached this conclusion after determining that Mr. Rowson had, for predicate offense 1 (identified as groups 1 through 4 in the PSR), a base offense level of 33, through the application of § 2A2.1(a)(1), which was increased by two levels, through the application of § 2A2.1(b)(1)(B) because one of the victims sustained a serious bodily injury, giving him an adjusted offense level of 35 (A-38). The plea agreement addressed the narcotics conspiracy as predicate offense 2 (identified as group 6 in the PSR), as having an offense level of 6, pursuant to §§ 2D1.1(a)(5) & (c)(17) (A-38). The plea agreement did not account for the assault identified as group 5 in the PSR. After grouping, there was no increase in the adjusted offense level of 35 for count 1 (A-38). This was reduced

41

by three levels for acceptance of responsibility giving him an adjusted offense level of 32 (A-39).

Applying § 2K2.4(b), the parties determined that Mr. Rowson had a Guidelines range of 60-months imprisonment, to run consecutively to any other sentence, for count 3 (A-39). It was also determined that he was a criminal history category I (A-39). With an offense level of 32, and a criminal history category I, he had a Guidelines range of 121 to 151 months imprisonment for count 1 (A-39). With the 60-months consecutive sentence for count 3, he had an aggregate Guidelines range of 181 to 211 months imprisonment (A-39).

The defense objected to the PSR's individual treatment of each victim associated with predicate offense 1 (A-84 – A-85). The government responded that the Guidelines are "ambiguous as to whether a single shooting event . . . can be broken up into groups for each of the affected victims" (A-113). Continuing, the government argued that the policy statement associated with § 3D1.2 lends some

42

support to Probation's view that each victim of the June 20, 2020[,] shooting should be treated separately for the purpose of Guideline calculations" (A-113). Additionally, the government disagreed with the application of the injury enhancement for victim 4 (A-113). While standing by the stipulated Guidelines in the plea agreement, the government stated that the Guidelines should include the conduct committed during the December 13, 2020, shooting, and concluded that it erred in the way it structured the plea agreement (A-113 – A-114).

The Court recognized that it is no longer required to follow the sentencing Guidelines, but that it is required to accurately calculate the Guidelines range (A-142 – A-143). It noted the difference between the Guidelines range set forth in the plea agreement from that in the PSR (A-143). Following the government's guidance,

                                    that a close analysis

of how the guidelines apply here could potentially result in

different outcomes.  But for the purposes of this case, I adopt

the parties' guideline calculation in the plea agreement, which

I find, at a minimum, to be among the viable approaches.  I

therefore find the offense level on Count One to be 32 and the

guideline range on that count to be 121 to 151 months'

imprisonment, to which must be added the mandatory 60-month

sentence on Count Three.

(A-144 – A-145). After explaining that it was the facts of the offense,

rather than the "granular guidance" of the Guidelines that it influenced

its decision, it noted that the PSR underscored an important point in

that there were four victims of the shooting (A-145). This, the Court

said, would be addressed when it considers the § 3553(a) factors (A-

145). That said, the Court directed "that the presentence report be

amended to change the offense level to 32 and the guideline range on

Count One to 121 to 151 months' imprisonment" (A-146).

The Court accepted the Guidelines range set forth in the plea agreement (A-169). Taking both counts into consideration, which required a mandatory consecutive 60-month sentence for count 3, and a range of 121 to 151 months for count 1, the Court determined that Mr. Rowson had a Guidelines range of 181 to 211 months imprisonment (A-169). The Court also recognized that it had to consider the § 3553(a) factors, and that it must impose a sentence that was sufficient but not greater than necessary to comply with the purposes of sentencing (A-169 – A-170).

When imposing its sentence, that Court recognized that Mr. Rowson's conduct was "deadly serious" in that he participated in shooting at four people (A-171). The Court noted that the Guidelines understated the crime because even if only one person had been hit, the Guidelines range would have been the same (A-171 – A-172). Other aspects of Mr. Rowson's conduct were also noted, particularly the fact that he was twice found in possession of a loaded firearm, and that he participated in fraudulent activity (A-172 – A-173). These facts, the

45

Court determined, "require[d] a substantial sentence" (A-173). This addressed the seriousness of the offense. *See* 18 U.S.C. § 3553(a)(2)(A).

The Court also spoke of the sentence addressing general deterrence (A-173 – A-174). The Court was concerned about gang violence and the need to send "a message to anyone who considered following [Mr. Rowson's] lead in joining a gang and participating personally in its violence" (A-173 – A-174). Additionally, the Court saw the need for deterring Mr. Rowson from committing future crimes (A-174 – A-175). *See id.* §§ 3553(a)(2)(B) & (C) (addressing specific and general deterrence).

The Court also addressed other factors that were important in imposing it sentence. First, Mr. Rowson's acceptance of responsibility (A-176). The letter Mr. Rowson wrote to the Court was also significant. As the Court noted, he "said all the right things about [his] regrets and [his] desire to move forward" (A-176). His remarks in Court were of the

same character, and the Court noted that he apologized to the victims of his co-defendant who were present (A-177).

As required by § 3553(a), the Court considered Mr. Rowson's history and characteristics (A-178). The Court recognized that he did not have the advantages parents hope their children would have. He grew up in a single parent home without a father, his neighborhood was filled with gangs and was violent, he was beaten for resisting a gang's recruitment efforts, and, after suffering from an untreated concussion, he lost motivation for school and began to self-medicate (A-178). The Court found that his background helped explain the choices he made (A-179).

The Court also addressed letters received from family and family friends in support of Mr. Rowson (A-119 – A-123; A-133 – A-137; A-179 – A-183). It also noted programs Mr. Rowson completed while in pretrial custody. Additionally, the Court considered the fact he spent nearly two years detained at MDC Brooklyn (A-183 – A-184).

47

After considering the § 3553(a) factors, the recommendation from Probation, the defense's request for a below Guidelines sentence, and the government's request for a sentence at the bottom of the Guidelines range, the Court imposed a sentence of 108 months imprisonment on count one to be followed by a 60-months consecutive sentence on count three for an aggregate sentence of 168-months imprisonment (A-187; A-195). The Court also imposed a three-years term of supervised release on count one and a five-years term of supervised release on count three to be served concurrently (A-187 – A-188; A-195).

Given that the Court fulfilled the requirements of 18 U.S.C. § 3553(a) when imposing Mr. Rowson's sentence, the 168-months sentence is procedurally reasonable.

48

### B. Mr. Rowson's sentence is substantively reasonable.

Even when an appellate court agrees that a sentence is procedurally reasonable its inquiry does not end. It must also determine whether the sentence is substantively reasonable. In assessing the substantive reasonableness of a sentence, the reviewing court must determine whether the sentence, "although procedurally correct, would nonetheless damage the administration of justice because the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *Rigas*, 583 F.3d at 123; *see also United States v. Dorvee*, 616 F.3d 174, 183 (2d Cir. 2010) (quoting *Rigas*). As such, this Court will not substitute its own judgment for that of the District Court and will reverse only in exceptional cases. *Cavera*, 550 F.3d at 189. A review of the non-Guidelines sentence imposed on Mr. Rowson shows that it was neither shockingly high, shockingly low, nor otherwise unsupportable as a matter of law.

Mr. Rowson entered into an agreement with the government and pleaded guilty to two counts of a ten-count superseding indictment (A-

36).[3] He faced a maximum sentence of 20 years imprisonment for violating 18 U.S.C. § 1962(d), and a maximum sentence of life for violating 18 U.S.C. § 924(c)(1)(A)(i). Under the plea agreement, Mr. Rowson had an aggregate sentencing range of 181 to 211 months imprisonment, based on a Guidelines range of 121 to 151 months imprisonment for count one, and a sentence of 60-months imprisonment for count three that must be served consecutively to any other sentence (A-38).

The Guidelines sentencing range set forth in the PSR was higher than the range agreed upon in the plea agreement (PSR at ¶ 120). However, Probation did recommend a sentence below the Guidelines range (A-185-). After addressing the objections to the PSR the Court adopted the plea agreement's Guidelines calculations finding them to be a viable approach (A-144 – A-145). Once adopting the lower Guidelines range, the Court considered the § 3553(a) factors. Though it found reasons for imposing a sentence above the bottom of the Guidelines

---

[3] Mr. Rowson was only charged with six counts in the superseding indictment (*see* A-18 – A-34).

50

range, as recommended by the government (*see* A-185 – A-186), the Court found the mitigating factors significant and imposed a sentence below the aggregate Guidelines range set forth in the plea agreement.

Accordingly, Mr. Rowson's 168-months sentence is neither shockingly high, shockingly low, nor otherwise unsupportable as a matter of law.

## IV. There could be adverse consequences if Mr. Rowson were to contest the plea.

A challenge to the validity of the plea agreement or the reasonableness of his below Guidelines sentence could be viewed as a breach of the agreement. If the case were returned to the District Court, it could result in the government returning to the grand jury and reindicting Mr. Rowson on the six charges that were dismissed (*see* A-190). If convicted, it could result in harsher sentence.

51

When determining Mr. Rowson's sentence, the Court noted that,

> So but for the mitigating factors, a sentence at the
> top of the guideline range or even above it could easily have
> been found reasonable, among other things, to achieve just
>
> punishment and public protection. And the fact that the
> guideline range ignores the fact that there were multiple
> victims here is just an artifact of the bad construct of the
> guidelines. It does not make sense to me that they would treat
> this offense the same as it there had been one shooting that
> hit one person instead of two shootings that hit more or could
> have hit more.

(A-185 – A-186). It was the mitigating factors that resulted in the
Court's decision to impose a sentence below the agreed upon Guidelines
range:

> Look, I will be rule blunt, but for the factor of
> Mr. Rowson having spent two years in the MDC and but for the
> mitigating facts about Mr. Rowson that I reviewed earlier, by
> which I mean his youth and lack of a criminal record and the
> various challenges he was presented with, a sentence well above
> the bottom of the guideline range would very clearly be in
> order here.

(A-185). When addressing the mitigating factors, the first thing the

noted was that Mr. Rowson accepted responsibility (A-176). The Court

acknowledged that, "[w]ere it not for your guilty plea, please note that

the sentence I would be imposing today would have been *materially*

higher" (A-176 (emphasis added)). The Court "respected and admired"

the way Mr. Rowson addressed the shame and embarrassment he felt in

his letter and his statement on the record (A-176 – A-177).


The statutory maximum sentence for count one is 20 years

imprisonment. The sentence for count three must be served

consecutively to any other sentence. The aggregate sentence Mr.

Rowson received for both counts one and three is below statutory

maximum sentence. If he were to unsuccessfully go to trial, he most

likely would receive a much harsher sentence well beyond the sentence

the District Court imposed.

Accordingly, Mr. Rowson would face adverse consequences if he were to successfully withdraw his plea, proceed to trial and be convicted.

### CONCLUSION

Pursuant to *Anders v. California*, counsel has conducted a thorough examination and search of the record in Mr. Rowson's case. As part of his plea agreement, Mr. Rowson knowingly and voluntarily agreed to waive his right to appeal any sentence within or below a Guidelines range of 181 to 211 months imprisonment. The District Court sentenced Mr. Rowson to an aggregate sentence of 168-months imprisonment. When taking Mr. Rowson's plea, the District Court followed Rule 11's requirements. His sentence is both procedurally and substantively reasonable. If he were given the opportunity to withdraw his plea and then be unsuccessful, there could be adverse consequences. That is, he could face a sentence much greater than 168-months imprisonment. He could also face additional charges.

Accordingly, there are no non-frivolous issues to press on appeal.

54

**DATED:** Rochester, New York
August 20, 2024

Respectfully submitted,

/s/Jay Ovsiovitch
Jay S. Ovsiovitch
Assistant Federal Public Defender
Attorney for Appellant
28 East Main Street, Suite 400
First Federal Plaza
Rochester, New York, 14614
Telephone: (585)263-6201

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

Docket No. 24-859-cr

**UNITED STATES,**

*Appellee*,

Certificate of
Compliance

v.

**ISZAYAH ROWSON,**

*Appellants.*

This brief contains 9,065 words, excluding the parts of the brief exempted by FED.R.APP.P. 32(a)(7)(B)(iii). Appellant has moved this Court for permission to file an oversize principal brief. This brief does comply with the typeface requirements of FED.R.APP.P. 32(a)(5) and the type style requirements of FED.R.APP.P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 with Century Schoolbook font in 14 point type.

Dated:    Rochester, New York
          August 20, 2024

 /s/Jay Ovsiovitch
JAY S. OVSIOVITCH
Counsel for Iszayah Rowson

ADDENDUM

## 18 U.S.C. § 1962. Prohibited activities.

**(a)** It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

**(b)** It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

**(c)** It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**(d)** It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

57

**18 U.S.C. § 924(c)(1)(A)(i). Penalties.**

Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—

> (i)    be sentenced to a term of imprisonment of not less than 5 years;

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**UNITED STATES,**                                    **Docket No. 24-859-cr**

                             *Appellee*,   **Affirmation of Service**

      **v.**

**ISZAYAH ROWSON,**

                             *Appellant.*

The undersigned hereby certifies that he is an employee of the
Federal Public Defender's Office for the Western District of New York
and is a person of such age and discretion as to be competent to serve
papers.

That, on August 20, 2024, he filed a copy of the attached **Brief
Pursuant to *Anders v. California*, 386 U.S. 738 (1967), and Joint
Appendix**, with the Clerk of the Court using the CM/ECF system.
Notification was sent to Assistant United States Attorney James
Ligtenberg.

In addition, the undersigned placed the original and five copies of
the *Anders* Brief, six copies of the Joint Appendix, and four copies of

pages 13 through 16 of the sentencing transcript filed on March 25, 2024, the Revised Presentence Investigation Report, dated November 21, 2023, and the Statement of Reasons portion of the Judgment (under seal) in an envelope to be sent to the place and address stated below, which is the last known address, and by entrusting said envelope and contents to Federal Express for express, overnight delivery.

ADDRESSEE:    United States Court of Appeals (Original & 5 copies)
Second Circuit
Thurgood Marshal United States Courthouse
40 Foley Square
New York, New York 10007

Attn: Intake Clerk

James Ligtenberg          (2 copies)
Assistant United States Attorney    (U.S. Mail)
Southern District of New York
One Saint Andrew's Place
New York, New York 10007

Iszayah Rowson, No. 94383-509    (1 copy)
FCI Williamsburg          (U.S. Mail)
PO Box 340
Salters, SC 29590

_ /s/Jay Ovsiovitch _____
Jay S. Ovsiovitch