# 24-0859-cr(L), 24-1205-cr(CON)

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

ISZAYAH ROWSON, AKA Sealed Defendant 1, AKA Zay Munna, AKA Zay,
MICHAEL GANT,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLANT MICHAEL GANT

DAVID L. MCCOLGIN, ESQ.
*Attorney for Defendant-Appellant*
*Michael Gant*
P.O. Box 397
Charlotte, Vermont 05445
(802) 356-9863

CP COUNSEL PRESS    (800) 4-APPEAL • (331850)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

I.      STATEMENT OF JURISDICTION ......................................................1

      A.    Basis for subject matter jurisdiction in the district court .....................1

      B.    Basis for jurisdiction of the Court of Appeals .....................................2

      C.    Timely notice of appeal .......................................................................2

      D.    Mr. Gant's custodial status ..................................................................3

II.     STATEMENT OF ISSUES PRESENTED FOR REVIEW ...........................3

III.    PRELIMINARY STATEMENT ........................................................4

IV.    STATEMENT OF THE CASE ..........................................................6

      A.    Overview of facts and charges ............................................................6

      B.    Plea agreement and hearing..................................................................6

      C.    Presentence Report ...............................................................................8

      D.    Defense Sentencing Letter ...................................................................9

      E.    Sentencing ..........................................................................................10

      F.    Rule 35(a) motion to correct sentence ...............................................16

IV.    SUMMARY OF ARGUMENT.........................................................17

V.     ARGUMENT................................................................................20

      POINT I

      The district court plainly erred at sentencing by ordering the
      Bureau of Prisons to grant credit for time in state custody since
      March 8, 2022, in violation of 18 U.S.C. § 3585(b), instead of
      deducting that period of time from the sentence, as recommended by
      USSG § 5G1.3(b)(1).........................................................................20

            Standard of Review ........................................................................20

            Discussion ......................................................................................20

i

POINT II

The district court judge plainly erred in recommending to the New
York State court judge, who would sentence Mr. Gant on related
state charges shortly after the federal sentencing, that the state court
impose its sentence to run concurrently with the federal sentence,
where the state court judge had no such authority, and only the
federal court could order that the sentences be served concurrently.............27

    Standard of Review ..............................................................................27

    Discussion .......................................................................................27

POINT III

Defense counsel provided ineffective assistance in failing to object
to the court's time credit and concurrency rulings on the grounds set
forth in Points I and II.....................................................................35

    Standard of Review ..............................................................................35

    Discussion .......................................................................................35

VI.    CONCLUSION...............................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Abdul-Malik v. Hawk-Sawyer,*
    403 F.3d 72 (2d Cir. 2005)................................................................ 19, 29

*Lafler v. Cooper,*
    566 U.S. 156 (2012).......................................................................36

*Lee v. United States,*
    137 S. Ct. 1958 (2017).....................................................................36

*Lugo v. Hudson,*
    785 F.3d 852 (2d Cir. 2015)........................................................... 22, 23

*McCarthy v. Doe,*
    146 F.3d 118 (2d Cir.1998).................................................................29

*Setser v. United States,*
    566 U.S. 231 (2012) ..................................................................... *passim*

*Strickland v. Washington,*
    466 U.S. 668 (1984)......................................................................36

*United States v. Abreau-Cabrera,*
    64 F.3d 67 (2d Cir. 1995)..................................................................38

*United States v. April,*
    854 F. App'x 410 (2d Cir. 2021) ........................................................24

*United States v. Burden,*
    860 F.3d 45 (2d Cir. 2017)............................................................ 26, 34

*United States v. Fermin,*
    252 F.3d 102 (2d Cir. 2001)......................................................... 22, 23

*United States v. Gamez,*
    577 F.3d 394 (2d Cir. 2009)..................................................... 25, 26, 34

*United States v. Gonzalez,*
    192 F.3d 350 (2d Cir. 1999)......................................................... 23, 24

*United States v. Harris,*
    707 F.2d 653 (2d Cir. 1983)..................................................................2

iii

*United States v. Haverkamp,*
958 F.3d 145 (2d Cir. 2020).................................................................. 20, 25, 27

*United States v. Kimber,*
777 F.3d 553 (2d Cir. 2015)...................................................................... 36, 37

*United States v. McIntosh,*
753 F.3d 388 (2d Cir. 2014)........................................................................ 28-29

*United States v. Melhuish,*
6 F.4th 380 (2d Cir. 2021) ...............................................................................35

*United States v. Montez-Gaviria,*
163 F.3d 697 (2d Cir. 1998)...........................................................................24

*United States v. Morris,*
350 F.3d 32 (2d Cir. 2003)..............................................................................36

*United States v. Ojeda,*
946 F.3d 622 (2d Cir. 2020)............................................................................30

*United States v. Olmeda,*
894 F.3d 89 (2d Cir. 2018)..............................................................................30

*United States v. Pineyro,*
112 F.3d 43 (2d Cir. 1997)..............................................................................21

*United States v. Whaley,*
148 F.3d 205 (2d Cir. 1998)............................................................................21

*United States v. Williams,*
205 F.3d 23 (2d Cir. 2000)..............................................................................37

*United States v. Williams,*
998 F.3d 538 (2d Cir. 2021)....................................................................... 27, 38

*United States v. Willis,*
14 F.4th 170 (2d Cir. 2021) ............................................................................16

*United States v. Wilson,*
503 U.S. 329 (1992)........................................................................................21

**Statutes & Other Authorities:**

18 U.S.C. § 924(c)(1)(A)(i) ..................................................................... 1, 2, 6

18 U.S.C. § 924(c)(1)(A)(ii) ...............................................................................1

iv

18 U.S.C. § 924(c)(1)(A)(iii) ..................................................................1

18 U.S.C. § 1959(a)(3) ...........................................................................1

18 U.S.C. § 1959(a)(5) ...........................................................................1

18 U.S.C. § 1962(d) ............................................................................1, 6

18 U.S.C. § 3231 ....................................................................................2

18 U.S.C. § 3582(c) .............................................................................13

18 U.S.C. § 3584 ..................................................................................14

18 U.S.C. § 3584(a) ....................................................................... *passim*

18 U.S.C. § 3585 ..................................................................................29

18 U.S.C. § 3585(a) .......................................................................22, 25

18 U.S.C. § 3585(b) ....................................................................... *passim*

18 U.S.C. § 3585(b)(2) .........................................................................22

18 U.S.C. § 3621(b) .............................................................................28

28 U.S.C. § 1291 ....................................................................................2

28 U.S.C. § 2255 ..................................................................................36

Fed. R. App. P. 4(b)(1)(A)(i) .................................................................2

Fed. R. Crim. P. 35(a) .............................................................16, 32, 38

U.S.S.G. § 5G1.3 ..................................................................................13

U.S.S.G. § 5G1.3(b) ...............................................................................9

U.S.S.G. § 5G1.3(b)(1) .................................................................. *passim*

U.S.S.G. § 5G1.3(c) ...................................................................... *passim*

# I.

## STATEMENT OF JURISDICTION

### A.    Basis for subject matter jurisdiction in the district court

Defendant-Appellant Michael Gant and co-defendant Iszayah Rowson were charged in U.S. District Court in the Southern District of New York on January 26, 2023, in a ten-count indictment. A23 (superseding indictment).[1] Mr. Gant was charged with racketeering conspiracy, 18 U.S.C. § 1962(d) (count 1), committing a violent crime in aid of racketeering, 18 U.S.C. § 1959(a)(3) and (5) (count 2), use of a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(i), (ii) and (iii) (count 3), committing a violent crime in aid of racketeering,18 U.S.C. § 1959(a)(3) and (5) (count 4), use of a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(i), (ii) and (iii), (count 5), committing a violent crime in aid of racketeering, 18 U.S.C. § 1959(a)(3) and (5) (count 6), and use of a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(i), (ii) and (iii) (count 7).

Federal authorities arrested Mr. Gant, who was in state custody at the time, on February 1, 2023. PSR ¶ 15. On September 5, 2023, he pleaded guilty pursuant to a plea agreement to counts one (racketeering) and a lesser included offense of

---

[1] "A" refers to the Appendix of the case. "PSR" refers to the Presentence Report that was produced in this case and filed under seal.

count seven (use of a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(i)). A49. On April 17, 2024, U.S. District Court Judge Paul A. Engelmayer sentenced Mr. Gant to a combined total of 16 years in prison (eleven years on the racketeering count and a consecutive mandatory minimum of five years on count seven), four years supervised release, and a special assessment of $200. A191-A195. The remaining counts were dismissed. Mr. Gant appeals from the order of judgment and commitment entered on April 18, 2024. A199. The district court has original jurisdiction over criminal offenses against the United States under 18 U.S.C. § 3231.

### B.      Basis for jurisdiction of the Court of Appeals

Mr. Gant may appeal his judgment of conviction to this Court pursuant to 28 U.S.C. § 1291. This Court has jurisdiction over a timely appeal from the "final decision" of a district court. *See* 28 U.S.C. § 1291. A judgment of conviction and sentence in a criminal case is a "final decision." *United States v. Harris*, 707 F.2d 653, 655 (2d Cir. 1983).

### C.      Timely notice of appeal

The district court entered the order of judgment and commitment in this case on April 18, 2024. A199. Mr. Gant timely filed Notice of Appeal on April 26, 2024. A207. *See* Fed. R. App. P. 4(b)(1)(A)(i).

### D.     Mr. Gant's custodial status

Mr. Gant was sentenced to a total of 16 years in prison. A200. He is currently serving a state sentence in the State of New York on a weapons charge that is relevant conduct for this federal case. The website for the New York State Department of Corrections indicates that his "Conditional Release Date" is February 18, 2025, and his "Maximum Expiration Date" is June 2, 2025. Upon release from state custody, he will be transferred into the custody of the Federal Bureau of Prisons to begin service of the 16-year sentence imposed in this case.

## II.

### STATEMENT OF ISSUES PRESENTED FOR REVIEW

A. Did the district court plainly err at sentencing by ordering the Bureau of Prisons to grant time-credit for time in state custody since March 8, 2022, in violation of 18 U.S.C. § 3585(b), instead of deducting that period of time from the sentence, as recommended by USSG § 5G1.3(b)(1)?

B. Did the district court judge plainly err in recommending to the New York State court judge, who would sentence Mr. Gant on related state charges shortly after the federal sentencing, that the state court impose its sentence to run concurrently with the federal sentence, where the state court judge had no such authority, and only the federal court could order that the sentences

be served concurrently?

C. Was defense counsel ineffective for failing to object to the court's time credit and concurrency rulings on the grounds set forth in Points I and II?

## III.

## Preliminary Statement

Mr. Gant pleaded guilty in federal court to racketeering and use of a firearm during a crime of violence. Judge Engelmayer sentenced Mr. Gant to a total of 16 years in prison. The judge made clear at sentencing his intent (1) that Mr. Gant be given credit for all his time in custody before sentencing, and (2) that his federal sentence run concurrently with his anticipated state court sentence on related charges. But because neither the judge nor the parties understood that Mr. Gant was in *primary state custody* and would therefore serve his state sentence first, the judge and the parties misunderstood how the sentence should be structured to accomplish the intended time credit and concurrent sentence. The result is that Mr. Gant will receive neither the time credit nor the concurrent sentence, and he is serving a sentence about three years longer than the judge intended.

Regarding the time credit, the judge and the parties all mistakenly thought the judge could order the Federal Bureau of Prisons to credit Mr. Gant for his time spent in custody prior to sentencing, which was just over two years. In fact, the judge had no such authority. By statute, the Bureau of Prisons is barred from

4

awarding any credit for time served that is being "credited against another sentence." 18 U.S.C. § 3585(b). Because Mr. Gant was in primary state custody, all his time in custody before sentencing was to be credited toward his state court sentence and could not be credited toward his federal sentence, which is to be served after his state sentence. The parties should have informed the judge of this statute and should have explained that the lawful way to give credit for this period of time was by reducing the sentence, as set out in USSG § 5G1.3(b)(1).

Regarding the concurrent sentence, the judge and the parties all mistakenly assumed that the state court judge, as the "second sentencing judge," would have the authority to decide whether the sentences would run concurrently. Judge Engelmayer thus mistakenly thought it was sufficient for him to recommend to the state court judge that the state sentences be concurrent with the federal sentence. Again, by failing to understand that Mr. Gant was in primary state custody, the judge and the parties failed to understand that regardless of the order in which the sentences were imposed, the state sentence would be served first, and only the federal court and the Bureau of Prisons could determine whether the subsequent federal sentence would be concurrent with the state sentence.

5

## IV

## STATEMENT OF THE CASE

### A.    Overview of facts and charges

As set out in the presentence report (PSR), Mr. Gant was a member of a gang in the Bronx called "Third Side," which made money by selling drugs and committing bank fraud. Third Side had rivalries with several other gangs and the members sometimes shot at each other. PSR ¶¶ 22-23. At the behest of the gang, on several occasions Mr. Gant shot at the members of rival gangs: On June 20, 2020, Mr. Gant and co-defendant Rowson fired at rival gang members and hit four individuals, all of whom survived. PSR ¶¶ 26-28. On July 7, 2020, Mr. Gant and another Third Side member shot at rival gang members, striking one individual, who survived. PSR ¶¶ 29-30. On July 16, 2020, two shooters from a rival gang shot at a Third Side member. As the two shooters fled, Mr. Gant shot at them, but did not hit anyone. PSR ¶¶ 31-32.

### B.    Plea agreement and hearing

In a written plea agreement, Mr. Gant agreed to plead guilty to count one of the indictment charging racketeering conspiracy, 18 U.S.C. § 1962(d), and a lesser included offense of count seven charging use of a firearm during a crime of violence, 18 U.S.C. § 18 U.S.C. § 924(c)(1)(A)(i)). A41. The parties stipulated to

guidelines resulting in a total offense level of 34. Mr. Gant, who was 22 years old, had no prior convictions and his criminal history was Category I. The parties agreed the resulting guideline range was 151 to 188 months, with a consecutive sentence on the firearm count of 60 months. The combined range was 211 to 248 months. A43-A44.

The plea agreement contained an appellate waiver stating that Mr. Gant would not appeal "any sentence within or below the Stipulated Guidelines Range of 211 to 248 months' imprisonment." A45. The agreement stated that the waiver "applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case." A46. The agreement stated that Mr. Gant reserved the right to assert claims of ineffective assistance of counsel. *Id.*

The plea agreement did not expressly foreclose raising on appeal any issues regarding credit for time served prior to sentencing. The agreement also did not expressly foreclose raising issues regarding imposition of the sentence to run consecutively or concurrently with an *anticipated* sentence of imprisonment that had *not yet* been imposed at the time of sentencing.

At the change of plea hearing, the plea agreement was introduced as Government Exhibit #1 and its terms were summarized. A67-A69. Mr. Gant

allocated and pleaded guilty pursuant to the terms in the agreement. A72-A75.

### C.    Presentence Report

The PSR calculated a higher guideline range than the parties agreed to in the plea agreement, concluding that the total offense level was 36 (instead of 34) and the combined guideline range was 248 to 295 months (instead of 211 to 248 months). PSR ¶¶ 89, 136. The probation officer recommended a downward variance to a combined total sentence of 188 months. PSR p.36. The PSR noted the extreme emotional and physical abuse Mr. Gant experienced from his drug-addicted mother, being hit with a belt and forced inside a dog cage, and then kicked out of the home at age eleven. The probation officer concluded that his young age, lack of any prior convictions, abusive upbringing, history of drug use and mental health problems all warranted a variance. PSR p.38.

The PSR noted that Mr. Gant had three open state court cases: Possession of a firearm (arrested and released July 21, 2020, PSR ¶ 95); Possession of a firearm (arrested and detained March 8, 2022, PSR ¶ 96); Assault and attempted murder at Rikers Island (arrested December 9, 2022, PSR ¶ 97). Mr. Gant had been in state custody at Rikers Island since his arrest on March 8, 2022. He was brought to a federal detention facility pursuant to a writ ad prosequendum on February 1, 2023. PSR ¶ 15. The writ, however, did not change the fact that he remained in primary state custody on the open state charges.

8

### D. Defense Sentencing Letter

Defense counsel argued in their sentencing letter that Mr. Gant, who was 18 years old at the time the offenses began, had an IQ of 71, suffered from intellectual disabilities, and had cognitive functioning compromised by learning deficits and emotional difficulties. As a child he experienced extreme emotional abuse, homelessness, and exposure to drugs and violence in his blighted neighborhood. A83. Counsel asked the court to take into account the harsh conditions Mr. Gant experienced in pre-sentence custody, first at Rikers Island for eleven months, and then at the Metropolitan Detention Center (MDC) in Brooklyn. A86.

Counsel requested that the court run Mr. Gant's sentence concurrently to the extent possible to the anticipated sentence on the open state court charges since two of the three state charges constituted relevant conduct for the federal charges. Counsel also asked the court to reduce Mr. Gant's sentence by eleven months under USSG § 5G1.3(b) for the time spent at Rikers Island on the related state court charges. A88.[2]

---

[2] Regarding the more than 14 months Mr. Gant spent in the federal facility at MDC Brooklyn prior to sentencing, it appears defense counsel mistakenly believed he would automatically be given federal credit for this time, even though he was only in a federal facility pursuant to a writ, and in fact remained in primary state custody.

### E.     Sentencing

At the sentencing on April 17, 2024, Judge Engelmayer followed the guideline calculations the parties agreed to in the plea agreement, resulting in a combined total range of 211 to 248 months. A129-A131.

The judge next had an extended discussion with the parties regarding his intent to give Mr. Gant credit for his time in custody prior to sentencing. The government told the judge that the two pending state firearm charges were "related conduct" for the federal charges and evidence of "those gun possessions" would have been introduced at the federal trial. A139-A141. The parties expected the open state charges would be resolved with a guilty plea in state court on April 24, 2024. A140.

The judge asked if the government had any objection to the court giving Mr. Gant credit for time served dating back to March 8, 2022, when he was arrested and held in state custody on the second firearm possession charge. A142. The government replied,

> MS. ESPINOSA: Your Honor, the government has no objection to you saying that. We do think here it would be beneficial to everyone if your Honor is explicit about whether you think any federal time should be concurrent, consecutive, or how it should be formulated. It's my understanding that it will of course be up to the state judge to decide -- the second sentencing judge to decide what in fact happens, but we certainly have no objection to your Honor making a clear recommendation as to what you think is appropriate.

10

A142.

The judge then made clear his intent (1) to recommend to the state court judge that the state sentence be imposed to run concurrently with the federal sentence and (2) to direct the Bureau of Prisons to give Mr. Gant credit for his time before sentencing in state custody. Neither party objected:

> THE COURT: So if I were to include language in the judgment that says to the effect that the sentence imposed here took into account the acts of firearms possession charged in the state case, and therefore the Court's recommendation is that the state judge make the sentences concurrent, is there anything in your view wrong with that?

> MS. ESPINOSA: Your Honor, there's nothing wrong with that, but my colleague reminds me that Mr. Gant also has an additional charge relating to a stabbing of an inmate in Rikers.

> THE COURT: That I have -- that has no bearing.

> MS. ESPINOSA: That has no bearing here, but it may impact the amount of time he ultimately spends in jail.

> THE COURT: I see.

> MS. ESPINOSA: Because there may be an additional sentence imposed on that that will not be related to the charged conduct in this case, and it's the government's view that while that stabbing may or may not have been gang related, there's no evidence it's specifically related to Third Side and we are not arguing that that –

> THE COURT: It also has not been factually established here.

11

MS. ESPINOSA: Correct, your Honor.

THE COURT: So the critical takeaways are that to the extent that the state case is based on the state firearms charges, you would agree it's appropriate for me to state my recommendation that the state sentence be served concurrently?

MS. ESPINOSA: Yes, your Honor.

THE COURT: And, number two, that again for clarify, that the defendant therefore ought to be given credit in this case by the Bureau of Prisons for the time served prior to his being writted into federal custody.

MS. ESPINOSA: The government has no objection to your Honor making that recommendation. It is my understanding that computations are within the purview of the Bureau of Prisons.

A142-A144.

Neither party objected nor pointed out to the court that the Bureau of Prisons would be prohibited by statute from giving Mr. Gant credit for any of the time served before sentencing if that time was being credited to another sentence. Nor did either party point out that only the federal judge could control whether the state and federal sentences would be served concurrently.

But the judge and the government did agree that in the event the Bureau of Prisons failed to follow the court's directives regarding concurrent sentencing and time credit, the defense could return to correct the sentence:

12

THE COURT: Right. Right. But by making the record, in the event the Bureau of Prisons doesn't heed what I am doing, it empowers the defense to seek, for example, in the context of a 3582(c) motion or something like that. A corrective –

MS. ESPINOSA: Certainly, your Honor.

THE COURT: And now that the law permits that, there's actually a rational use to which this can be put.

MS. ESPINOSA: Certainly, your Honor.

A144.

Later in the sentencing, defense counsel informed the judge that Mr. Gant intended to plead guilty to the open state court charges the following week and that she anticipated a seven-year total sentence for the three cases. A164-A165. She requested the judge run the federal sentence concurrently with the state sentence, noting that the Second Circuit had ruled in accordance with USSG § 5G1.3 that the federal judge should rule on whether the federal sentence is to run concurrently with an anticipated state sentence. A166. The judge replied that he would not state that the federal sentence is to run concurrently with the state sentence because there was not "even a guilty plea" yet in the state court. A166. The judge made clear he thought the second judge to impose sentence would have the ultimate authority to run the sentences concurrently with each other:

THE COURT: ….  At the end of the day, the state judge will be the

13

second sentencer and is in a better position to make a judgment about all in the relationship of the two cases. But you're asking me to shape the sentence here based on a future sentencing in a case where there hasn't been a guilty plea, I can't do that.

A170-A171.

Neither the government nor defense counsel pointed out that the state court would have no authority to run the sentences for the related states court firearms offenses concurrently with the federal sentence.[3]

The judge ultimately imposed a sentence of 132 months on count one, and the mandatory consecutive sentence of 60 months on count seven, for a combined total sentence of 192 months, or 16 years. A191-A192. The judge added the following regarding the time credit and concurrent sentencing issues:

> THE COURT: …. As I said during my colloquy with counsel, the judgment will also reflect the following:
>
> It should reflect that my judgment is you should receive credit for your time in custody dating back to March 8, 2022. Because whether held in state or federal custody, you were being held on the conduct for which you have been sentenced.
>
> Second, I will state that in my view to the extent that you one day may be sentenced in a state court based on the two acts of firearms possession, it is my view that the sentence in that case to that extent should run concurrent to the sentence on Count One here, insofar as I took those acts of firearms possession into account in

---

[3] Defense counsel did state that even if the state court judge intended to run the "stabbing sentence" concurrently upon finding it was related, he would not have that authority under 18 U.S.C. § 3584. A171. But counsel did not point out that the state court would also be without authority to run the sentences for the state firearms offenses concurrently with the federal offense.

determining the sentence on Count One.

A192.

Consistent with the sentencing record, the judgement order stated the

following regarding time credit:

> The defendant should receive time served credit dating back to March
> 8, 2022 when he was first arrested on conduct for which he was
> sentenced in this case.

A200.

Regarding the concurrent sentencing recommendation, the judgment

was again consistent with the sentencing record, stating:

> This sentence takes into account the two acts of firearm possession for
> which Mr. Gant is being prosecuted in New York State. The Court
> recommends to any state-court judge that, to the extent a state-court
> sentence is based on those two acts of firearm possession, that
> sentence should run concurrently to the sentence imposed on Count
> One in this case, as the Court considered such conduct in fashioning
> the sentence on that count.

A201.[4]

---

[4] According to state court transcripts, on April 24, 2024, Mr. Gant pleaded guilty in
Bronx Supreme Court to two counts of attempted criminal possession of a weapon
in the second degree, and one count of attempted assault in the second degree, in
satisfaction of his three open state court cases. The prosecutor informed the court
that the federal judge had recommended the state court sentences for the two
weapons charges be imposed to run concurrently with the federal sentence.

Mr. Gant was sentenced in Bronx Supreme Court on May 15, 2024, to one
year in prison as a youthful offender on the first weapon charge, two years prison

### F.     Rule 35(a) motion to correct sentence

On April 29, 2024, twelve days after the sentencing, defense counsel filed a letter motion under Fed. R. Crim. P. 35(a) to correct sentence, arguing that it is up to the federal court and not the state court to order the sentences to run concurrently. Counsel requested the court apply USSG § 5G1.3(c) and impose the federal sentence to run concurrently with the anticipated state sentence, since otherwise the Federal Bureau of Prisons might run the sentences consecutively. A210 (citing *United States v. Willis*, 14 F.4th 170, 190 (2d Cir. 2021)).

The government in a response filed May 7, 2024, objected, noting that the district court was already outside the 14-day window of jurisdiction in which it could act on such a motion. The government acknowledged that the two state firearms charges were "relevant conduct that the Court considered in fashioning his sentence" and that therefore USSG § 5G1.3(c) applied. But the government insisted that the district court had considered this provision and acted within its discretion in directing its recommendation of concurrent sentencing to the state court. A211-A212.

---

plus two years supervision on the second weapon charge, and one year to run concurrently on the assault charge. The judge ordered that all three sentences run concurrently with the federal sentence. Mr. Gant completed his two concurrent one-year sentences and is currently serving his two-year state sentence on the second weapon charge. His "Conditional Release Date" is February 18, 2025, and his "Maximum Expiration Date" is June 2, 2025.

16

On May 8, 2024, the court denied the motion, noting first that it likely lacked jurisdiction to correct the sentence because more than 14 days had elapsed since sentence was imposed. A215 n.2. The court also stated that it had considered USSG § 5G1.3(c), but concluded that the decision of concurrency should be left up to the state court judge:

> There were good reasons for the Court not to inexorably require that a sentence to be imposed in a state-court case run concurrently with that here: specifically, the Court's inability to foresee the full range of conduct on which such a sentence would be based. For that reason, after thoughtful consideration, the Court exercised its discretion (1) to recommend in firm and clear terms that any state sentence run concurrently to Gant' s federal sentence to the extent such a sentence was based on conduct for which this Court had sentenced Gant, but (2) to leave that the determination to the state court. Judgment at 3. The Court declines to revisit that assessment.

A216.

## IV.

## SUMMARY OF ARGUMENT

Mr. Gant is serving a sentence about three years longer than Judge Engelmayer intended because the judge and the parties did not understand that Mr. Gant was in primary state custody. For this reason, they did not foresee the ramifications this status would have on how his state and federal sentences would be served (1) in terms of credit for time served, and (2) in terms of which court could control whether the state and federal sentences were to be served

17

concurrently.

Point I: The judge plainly erred at sentencing in directing the Federal Bureau of Prisons (BOP) to award Mr. Gant credit for time in custody from the date of his arrest on state charges on March 8, 2022. By statute the BOP is barred from awarding any credit for time served that is being "credited against another sentence." 18 U.S.C. § 3585(b). The judge and the parties did not recognize that even though Mr. Gant appeared in federal court pursuant to a writ, he was still in primary state custody, and therefore the state sentence would be served first. Thus, all of Mr. Gant's time in custody before sentencing is credited to his state sentence and not his federal sentence. The judge's time credit order was unlawful. The Judge instead should have taken the approach suggested by the Guidelines in USSG § 5G1.3(b)(1) and adjusted the sentence downward by the amount of time credit (about 25 months) he intended Mr. Gant to receive.

Point II: The judge, in recommending that the state court impose its sentence to run concurrently with the federal sentence, incorrectly assumed that because the state court would be imposing sentence second, the state court had authority to decide whether the sentences would be served concurrently. The judge and the parties failed to understand that because Mr. Gant was in primary state custody, his state sentence would be served first, even though it was imposed second. With the state sentence being served first, the state judge had no authority to order the

18

sentences to run concurrently. *See Abdul-Malik v. Hawk-Sawyer*, 403 F.3d 72, 75 (2d Cir. 2005) (state court order that sentence run concurrently with federal sentence not binding on federal authorities). Only the federal judge could do this, and only by recommending to the BOP that the *federal* sentence be concurrent with the *state* sentence. *See* 18 U.S.C. § 3584(a). This plain error added about one year to the sentence Judge Engelmayer intended to impose.

Point III: Neither of the errors in Points I and II is covered by the appellate waiver in the plea agreement, but even if they were, reversal would still be required based on ineffective assistance of counsel that is plain on the face of the record. Both errors were plain and there was no strategic reason for counsel not to point out the errors to the court. (Indeed, the government was at least equally responsible in this regard.) The errors caused substantial prejudice to Mr. Gant by increasing the time in custody he is to serve by a total of about three years.

# V.

# ARGUMENT

## POINT I

**The district court plainly erred at sentencing by ordering the Bureau of Prisons to grant credit for time in state custody since March 8, 2022, in violation of 18 U.S.C. § 3585(b), instead of deducting that period of time from the sentence, as recommended by USSG § 5G1.3(b)(1).**

### Standard of Review

Because there was no objection in the district court to the court's order regarding the award of time credit, the error is reviewed for plain error. However, "a 'relaxed' form of plain error review is appropriate in the sentencing context because the cost of correcting an unpreserved error is not as great as in the trial context." *United States v. Haverkamp*, 958 F.3d 145, 149 (2d Cir. 2020) (internal quotation marks and citation omitted).

### Discussion

The judge plainly erred at sentencing in directing the Federal Bureau of Prisons (BOP) to award Mr. Gant credit for time in custody from the date of his arrest on state charges on March 8, 2022. By statute the BOP is barred from awarding any credit for time served that is being "credited against another sentence." 18 U.S.C. § 3585(b). The judge and the parties did not recognize that

20

even though Mr. Gant appeared in federal court pursuant to a writ, he was still in primary state custody, and therefore the state sentence would be served first. Thus, all of Mr. Gant's time in custody before sentencing is credited to his state sentence and not his federal sentence. The judge's time credit order was unlawful. The Judge instead should have taken the approach suggested by the Guidelines in USSG § 5G1.3(b)(1) and adjusted the sentence downward by the amount of time credit (about 25 months) he intended Mr. Gant to receive.

It is well-settled law that "[t]he Attorney General, through the BOP, possesses the sole authority to make credit determinations pursuant to 18 U.S.C. § 3585(b); the district courts do not have authority to order the BOP to either grant or deny credit or to disregard the BOP's calculations." *United States v. Whaley*, 148 F.3d 205, 206–07 (2d Cir. 1998) (citing *United States v. Wilson*, 503 U.S. 329, 333 (1992); *United States v. Pineyro*, 112 F.3d 43, 45 (2d Cir.1997)). Judge Engelmayer thus did not have the authority to order the BOP to grant Mr. Gant any time credit.

But the time-credit order was unlawful for a second more important reason: Mr. Gant was not in federal custody prior to (or even after) his federal sentencing because he was brought to court by way of a writ of habeas corpus ad prosequendum, and his time in state custody is being credited to another sentence. As the Second Circuit has explained,

21

Under 18 U.S.C. § 3585(a), a defendant's federal sentence begins when he or she "is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." However, a defendant held at a federal detention facility is not "in custody" for the purposes of § 3585(a) when he is produced through a writ of habeas corpus ad prosequendum… Further, under 18 U.S.C. § 3585(b)(2), the state time that Fermin had served before his federal sentencing, including the period of time after his conditional release date, would not be credited towards his federal sentence, because a defendant is credited only for the following:

> any time he has spent in official detention prior to the date the sentence commences-
>
> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendants was arrested after the commission of the offense for which the sentence was imposed;
>
> *that has not been credited against another sentence.*

18 U.S.C. § 3585(b).

*United States v. Fermin*, 252 F.3d 102, 108 n.10 (2d Cir. 2001) (emphasis in

original). Because Fermin's pre-sentence custody time was "credited against

another sentence," the BOP could not credit it towards his federal sentence. *Id. See*

*also Lugo v. Hudson,* 785 F.3d 852, 855–56 (2d Cir. 2015) (defendant transferred

from state to federal custody pursuant to writ ad prosequendum remained in

primary state custody during federal prosecution and "that detention period was

properly credited towards his state sentence"; defendant did not begin serving

22

federal sentence until released from state custody and delivered to federal officials).

*Fermin* and *Lugo* are directly on point. Because Mr. Gant was in primary state custody before his sentencing, all that time is credited towards his state court sentence, and the BOP is barred from crediting it toward his federal sentence by 18 U.S.C. § 3585(b). Judge Engelmayer's order at sentencing and in the judgment that BOP grant time credit dating back to March 8, 2022, was therefore unlawful for this reason too.

Neither party pointed out to the judge the unlawfulness of his order nor explained that the BOP would be barred from implementing it. Instead, both parties helped the judge calculate the time credit, ultimately agreeing it should begin on the date of his arrest by state authorities on March 8, 2022. A139-A142. The result is that Mr. Gant is serving a sentence about 25 months longer than Judge Engelmayer intended.[5]

The lawful way for the court to grant credit for time served before sentence is by reducing the sentence by the amount of time the court wishes to credit. In *United States v. Gonzalez*, 192 F.3d 350 (2d Cir. 1999), for example, the judge

---

[5] The time credit the judge sought to grant was from the date of Mr. Gant's arrest by state authorities on the second weapons charge, March 8, 2022, until the date of the federal sentencing on April 17, 2024, which is just over 25 months.

imposed a sentence of 156 months, but attempted to order the BOP to grant the defendant credit for 27 months he spent in state custody on related charges prior to his federal sentencing. This Court reversed, stating that the attempt "to 'backdate' the beginning of Gonzalez's sentence to the date of his New Jersey arrest" exceeded the judge's authority because only the BOP can grant credit for time served. *Id.* at 353. Finding that Gonzalez would therefore "serve a sentence that is approximately 27 months longer than the district court apparently intended," the Court explained that the "proper way to ensure that Gonzalez served a total of 156 months would have been for the court to increase the downward departure it granted him and sentence him to 129 months." *Id.* At the request of both parties, the Court remanded for resentencing to allow the court to impose the sentence it intended. *Id. See also United States v. Montez-Gaviria*, 163 F.3d 697, 705 (2d Cir. 1998) (parties agreed court erred in attempting to grant defendant time credit for time spent before sentencing in state custody; remand appropriate for "purpose of permitting [court] to decide whether to exercise its discretion to depart further downward from the Sentencing Guidelines on the basis of the defendant's uncredited time served"). *United States v. April,* 854 F. App'x 410, 414–15 (2d Cir. 2021) (parties agreed district court erred in attempting to grant time credit for time in custody prior to sentencing; "remand is appropriate to enable the district court to reconsider its imposed sentence").

24

Remand for resentencing is equally appropriate here to allow the judge to impose the sentence he intended. Indeed, the Guidelines now provide that such reductions in sentence shall be made as needed to account for any period of imprisonment resulting from another offense that is relevant conduct "if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons." USSG § 5G1.3(b)(1). Regardless of whether a reduction is made under this provision or as a variance, Judge Engelmayer should have the opportunity to impose the sentence he intended to impose.

The judge's unlawful time credit order constituted plain error. As noted above, plain error at sentencing should be subject to a "relaxed" form of review because correcting the error through a remand for resentencing is not costly or burdensome on the court system. *See United States v. Haverkamp*, 958 F.3d 145, 149 (2d Cir. 2020); *United States v. Gamez*, 577 F.3d 394, 397 (2d Cir. 2009) ("plain error doctrine should not be applied stringently in the sentencing context").

The error here easily meets all four prongs of plain error. First, the time credit order was "error" because it violated 18 U.S.C. § 3585(a) and the binding circuit caselaw discussed above. Second, the error was "plain" in light of the statute and the "settled law," *id.* at 400, establishing that district courts cannot order the BOP to grant time credit, especially for time served on another sentence. Third, the error affected Mr. Gant's "substantial rights" because it "affected the

25

outcome of the district court proceedings," *id.* at 400-01, by resulting in a longer sentence than the judge intended. Fourth, "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings," *id.* at 401, because it resulted in a significant increase in Mr. Gant's length of imprisonment.[6]

This plain error requires that Mr. Gant's sentence should be vacated and remanded for resentencing so the Judge can impose the sentence he intended to impose, taking into account the time Mr. Gant served in pre-sentence detention on related state court charges.

---

[6] Although the plea agreement contained a waiver of the right to appeal any sentence within or below the guideline range, A45, the agreement did not specifically include a waiver of the right to challenge any order regarding time credit, and thus the challenge to the court's unlawful time credit order is not barred by the waiver. *See United States v. Burden*, 860 F.3d 45, 53-54 (2d Cir. 2017) (holding that appeal waivers should be construed "strictly against the government," and "[w]hen an appeal waiver is silent regarding a specific aspect of a sentence, this Court generally finds that the appeal waiver does not foreclose challenges to that aspect of the sentence").

## POINT II

**The district court judge plainly erred in recommending to the New York State court judge, who would sentence Mr. Gant on related state charges shortly after the federal sentencing, that the state court impose its sentence to run concurrently with the federal sentence, where the state court judge had no such authority, and only the federal court could order that the sentences be served concurrently.**

Standard of Review

There was no objection at sentencing to the court's recommendation that the state court impose its sentence to run concurrently with the federal sentence. This issue is therefore reviewed for plain error. *See United States v. Williams*, 998 F.3d 538, 540 (2d Cir. 2021) (plain error review applies if defendant does not object "when sentence is imposed"). However, as noted in Point I, "a 'relaxed' form of plain error review is appropriate in the sentencing context because the cost of correcting an unpreserved error is not as great as in the trial context." *United States v. Haverkamp*, 958 F.3d 145, 149 (2d Cir. 2020) (internal quotation marks and citation omitted).

Discussion

The judge, in recommending that the state court impose its sentence to run concurrently with the federal sentence, incorrectly assumed that because the state court would be imposing sentence second, the state court had authority to decide

27

whether the sentences would be served concurrently. The judge and the parties failed to understand that because Mr. Gant was in primary state custody, his state sentence would be served first, even though it was imposed second. With the state sentence being served first, the state judge had no authority to order the sentences to run concurrently. Only the federal judge could do this, and only by recommending to the BOP that the *federal* sentence be concurrent with the *state* sentence. *See* 18 U.S.C. § 3584(a). The judge's ineffectual recommendation to the state court judge regarding concurrent sentences constituted plain error and added about one year to the sentence the judge intended to impose.

As the Supreme Court has made clear, "[i]f a prisoner ... starts in state custody, serves his state sentence, and then moves to federal custody, it will always be the Federal Government—whether the district court or the Bureau of Prisons—that decides whether he will receive credit for the time served in state custody." *Setser v. United States*, 566 U.S. 231, 241 (2012).[7] *See also United States v.*

---

[7] The BOP derives its authority to implement a federal court's order to run a federal sentence concurrently with a state sentence from 18 U.S.C. § 3621(b). As *Setser* explains,

> Section 3621(b) gives the [BOP] the authority to order that a prisoner serve his federal sentence in any suitable facility "whether maintained by the Federal Government or otherwise." The Bureau may therefore order that a prisoner serve his federal sentence in a *state* prison. Thus, when a person subject to a federal sentence is serving a state sentence, the Bureau may designate the state prison as the place of imprisonment for the federal sentence—effectively making the two

*McIntosh,* 753 F.3d 388, 395 (2d Cir. 2014) (when defendant serves initial state sentence and subsequent federal sentence, the federal district court decides whether they are to run concurrently). In the reverse situation, where the federal sentence is served first, the state court decides whether the sentences run concurrently. *Id.* (citing *Setser*, 566 U.S. at 241).

The "default rule" is that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." *Id.* (quoting 18 U.S.C. § 3584(a)). But a *state* sentencing court's ruling that its sentencing is to run concurrently with a federal sentence "is not binding on federal authorities." *Abdul-Malik v. Hawk-Sawyer*, 403 F.3d 72, 75 (2d Cir. 2005) (citing *McCarthy v. Doe*, 146 F.3d 118, 120–21 (2d Cir.1998) ("[A]lthough petitioner emphasizes the state court's designation of its sentence to run concurrently with petitioner's federal sentence, we note that the state court's intent is not binding on federal authorities.")).

The order in which the federal and state sentences are imposed makes no difference to the federal court's authority—only the order in which they are served. Thus, as this Court has explained, "district courts generally have discretion to order

_____

sentences concurrent—or decline to do so—effectively making them consecutive.
566 U.S. at 235. The earliest date the BOP can start the concurrent sentence is the date the federal sentence was imposed. *See* 18 U.S.C. § 3585.

that a sentence run concurrently or consecutively with an anticipated state sentence." *United States v. Ojeda*, 946 F.3d 622, 628 (2d Cir. 2020) (citing *Setser*, 566 U.S. at 236-37). And USSG § 5G1.3(c) "explicitly recommends that concurrent sentencing 'shall be imposed' with respect to anticipated sentences for relevant conduct." *Id. See also United States v. Olmeda,* 894 F.3d 89, 90 (2d Cir. 2018) ("We now hold that Section 5G1.3(c) applies where state charges are pending—but have not yet been the subject of a trial or a guilty plea—at the time of the federal sentencing.").

Here, Judge Engelmayer repeatedly stated his incorrect understanding that the second judge to impose sentence – the state court judge – would decide whether the sentences would run concurrently or consecutively. The judge was evidently unaware that because Mr. Gant was in primary state custody, the state sentence would be served first regardless of the order in which the sentences were imposed, and thus only the federal court and BOP would have authority to determine whether the sentences were to be concurrent. *See Setser*, 566 U.S. at 241. The government appears to have been the source of the judge's erroneous understanding of the state court's authority, telling the judge initially,

> We do think here it would be beneficial to everyone if your Honor is explicit about whether you think any federal time should be concurrent, consecutive, or how it should be formulated. *It's my understanding that it will of course be up to the state judge to decide - - the second sentencing judge to decide what in fact happens*, but we

30

certainly have no objection to your Honor making a clear recommendation as to what you think is appropriate.

A142.

Picking up on this mistaken understanding, Judge Engelmayer asked, "So if I were to include language in the judgment that says to the effect that the sentence imposed here took into account the acts of firearms possession charged in the state case, and therefore the Court's recommendation is that the state judge make the sentences concurrent, is there anything in your view wrong with that?" A142-143. The government replied, "Your Honor, there is nothing wrong with that…." A143.

The government again reinforced the judge's mistaken understanding in the following exchange:

> THE COURT: So the critical takeaways are that to the extent that the state case is based on the state firearms charges, you would agree it's appropriate for me to state my recommendation that the state sentence be served concurrently?
>
> MS. ESPINOSA: Yes, your Honor.

A143-A144.

Later, when defense counsel requested the judge to order that the federal sentence run concurrently with the state sentence, the judge restated his mistaken understanding that it was up to the state court judge as the "second sentencer" to make that decision:

31

> THE COURT: ….  At the end of the day, the state judge will be the second sentencer and is in a better position to make a judgment about all in the relationship of the two cases. But you're asking me to shape the sentence here based on a future sentencing in a case where there hasn't been a guilty plea, I can't do that.

A170-A171. The judge thus did not order the BOP to run the federal sentence concurrently with the state sentence. Instead, he recommended that the state court judge order the state sentence to be concurrent with the federal sentence:

> The Court recommends to any state-court judge that, to the extent a state-court sentence is based on those two acts of firearm possession, that sentence should run concurrently to the sentence imposed on Count One in this case, as the Court considered such conduct in fashioning the sentence on that count.

A201.

Even in his Order denying defense counsel's Rule 35(a) letter motion, the Judge continued to assert incorrectly that he could "leave that … determination [of concurrency] to the state court." A216. The judge continued to believe incorrectly that "the second sentencer" would have the authority to run the sentences concurrently.

Evidently, the judge and the parties mistakenly believed that Mr. Gant was in primary federal custody because he was present in federal court on a writ, and that the federal sentence would be served first. Had this understanding been correct and had Mr. Gant in fact been in primary federal custody, then the judge would

32

have been correct in thinking the state court judge could decide whether the state sentence, coming second, would be served concurrently with the federal sentence. But since Mr. Gant was in primary state custody, the state sentence was to be served first and the state court judge had no authority to order that the state sentence be concurrent with the federal sentence.[8] *See Setser*, 566 U.S. at 241.

The court thus erred in making a recommendation of concurrency to a state court judge who had no authority or power over the issue. Instead, the judge should have directed the BOP to run the federal sentence concurrently with the anticipated state sentence. *See* USSG § 5G1.3(c). Without that directive, the BOP will run the federal sentence consecutively to the state sentence in accordance with the default rule that applies to sentences imposed at separate times. 18 U.S.C. § 3584(a). The result will be to increase Mr. Gant's time in custody by about one year.[9]

-------------------

[8] At the state court sentencing on May 15, 2024, the judge did order that the state sentence run concurrently with the federal sentence, but as noted above, the state court judge did not have this authority and cannot direct the Federal BOP to grant concurrency. Only the federal judge can make this determination.

[9] Mr. Gant is currently serving his state sentence on the second weapons charge. His conditional release date is February 18, 2025, and his maximum expiration date is June 2, 2025. Serving his federal sentence consecutively to the state sentence results in his federal sentence beginning on the date the state turns him over to federal authorities, which will be sometime between February 18, 2025, and June 2, 2025. If BOP were ordered to run the federal sentence concurrently with the state sentence, the federal sentence would begin on the date it was imposed – April 17, 2024. The difference is thus about one year in custody.

Like the time credit error discussed in Point I, the court's error in making a recommendation of concurrency to a state court judge who had no authority over the issue meets the four prongs plain error. *See Gamez*, 577 F.3d at 400-01 (setting out four prongs of plain error). The law is well-settled after *Setser* that it is up to the federal judge to make this determination, and that the judge can order a federal sentence to run concurrently with an anticipated state court sentence. The error affected Mr. Gant's substantial rights because it affected the outcome of the district court proceedings by resulting in about one year in custody longer than the judge intended. Last, "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings" because it resulted in a significant increase in Mr. Gant's length of imprisonment.[10]

Mr. Gant's sentence should be vacated and the case remanded for a resentencing. It is now clear that both the federal judge and the state judge intended

---

[10] The plea agreement contains a waiver of the right to appeal the sentence that "applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case." A46. By its own terms, however, this specific provision does not cover imposition of a sentence to run concurrently or consecutively with an *anticipated* sentence that has *not yet been imposed*, and thus the challenge to the court's recommendation of concurrency to the state court is not barred by the waiver. *See Burden*, 860 F.3d at 53-54 (holding that appeal waivers should be construed "strictly against the government," and "[w]hen an appeal waiver is silent regarding a specific aspect of a sentence, this Court generally finds that the appeal waiver does not foreclose challenges to that aspect of the sentence").

their sentences to run concurrently with each other. Yet, because of confusion over who had the authority to order they be served concurrently, the BOP does not have any federal court order directing that the sentences be concurrent and it will follow the default rule of running the sentences consecutively. 18 U.S.C. § 3584(a). Upon remand, Judge Engelmayer, understanding that he is the one with sole authority over the issue and that the state court intended the sentences be served concurrently, will be able to determine how best to exercise his authority.

## POINT III

**Defense counsel provided ineffective assistance in failing to object to the court's time credit and concurrency rulings on the grounds set forth in Points I and II.**

### Standard of Review

A claim of ineffective assistance of counsel is subject to *de novo* review. *See United States v. Melhuish*, 6 F.4th 380, 392 (2d Cir. 2021).

### Discussion

The errors in Points I and II are not covered by the appellate waiver in the plea agreement, and thus they can be addressed as plain error as set out above. But even if these errors were covered by the appellate waiver, reversal would still be required based on ineffective assistance of counsel that is plain on the face of the record. No additional fact-finding is needed. Both errors were plain under statute

and settled caselaw, and there was no strategic reason for counsel not to point out the errors to the court. (Indeed, the government was at least equally responsible for not pointing out the errors.) These errors caused substantial prejudice to Mr. Gant by increasing the time in custody he is to serve by a total of about three years.

"The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea." *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017) (quoting *Lafler v. Cooper,* 566 U.S. 156, 165 (2012)). To establish ineffectiveness under the constitution, the defendant must show that counsel's representation "fell below an objective standard of reasonableness" and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984).

When a claim of ineffective assistance of counsel is raised on direct appeal, this Court may "(1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255; (2) remand the claim to the district court for necessary factfinding; or (3) decide the claim on the record before us." *United States v. Kimber*, 777 F.3d 553, 562 (2d Cir. 2015) (quoting *United States v. Morris,* 350 F.3d 32, 39 (2d Cir.2003)).

While in most cases a motion under § 2255 is preferable to direct appeal if the record is incomplete regarding the ineffectiveness claim, this general rule does

36

not apply to cases in which the defendant has new counsel on appeal and "argues no ground of ineffectiveness that is not fully developed in the trial record." *United States v. Williams*, 205 F.3d 23, 35 (2d Cir. 2000). Such is the case here. Counsel's deficient performance in failing to object to the court's errors regarding time credit and concurrency with the state sentence is plain on the face of the record and resolution of the claim is beyond any doubt. *See Kimber*, 777 F.3d at 562 (holding resolution of ineffectiveness claim on direct appeal appropriate because it depended entirely on legal question involving applicability of statute to his conduct, which was subject of defendant's appeal on merits).

For the reasons set forth in Point I regarding the court's error in ordering the BOP to grant time credit dating back to March 8, 2022, this error was plain and obvious under statute and Second Circuit caselaw. There was no possible strategic reason for counsel not to point out this error, to explain that the BOP could not lawfully follow such an order, and to explain that the appropriate way to grant this credit would be by reducing the sentence by the same amount of time that the court wanted to credit. Defense counsel thus provided deficient performance during the sentencing that "fell below an objective standard of reasonableness."

For the reasons set forth in Point II regarding the court's error in recommending the state court impose its sentence to run concurrently with the federal sentence, the error was equally plain and obvious under statute and Second

37

Circuit caselaw. Counsel had no conceivable strategic reason for failing to point out that Mr. Gant was in primary state custody and thus would serve his state sentence first. Counsel should have explained that under these circumstances only the federal court and BOP have authority to order the sentences be served concurrently. Counsel should have further explained that under *Setser*, 566 U.S. at 235-37, and USSG § 5G1.3(c), the judge may order a sentence to run concurrently with an anticipated state sentence for related conduct.

Counsel attempted to remedy this oversight through a letter motion under Fed. R. Crim. P. 35(a) filed twelve days after sentencing. A209. But this letter did not preserve the issue for appeal because it came after the sentencing hearing. *See Williams*, 998 F.3d at 540 (plain error review applies if defendant does not object "when sentence is imposed"). In addition, the letter motion was filed too late to allow reasonable time for the government to respond and for the court to rule within the statutory period of 14 days. *See* Fed. R. Crim. P. 35(a); *United States v. Abreau-Cabrera*, 64 F.3d 67, 74 (2d Cir. 1995) (if Rule 35(a) motion is not decided within 14 days, court loses power to act and motion is deemed denied); A215 n.2 (noting that court likely lacked jurisdiction because judgment may be corrected under Rule 35(a) only within 14 days of sentencing).

Counsel's deficient performance prejudiced Mr. Gant because the combined effect of the two errors was to increase his time in custody by about three years

beyond what the district court intended. Accordingly, both prongs of the *Strickland* test for ineffectiveness are met and reversal on grounds of ineffective assistance of counsel is warranted in the event the appellate waiver is interpreted broadly as applying to Issues I and II.

## VI.

## CONCLUSION

For the reasons set forth in Points I, II and III, the Court should vacate Mr. Gant's sentence and remand for resentencing to allow the district court judge to impose the sentence he intended.

Dated at Burlington, Vermont this 21st day of August 2024.

By:   */s/ David L. McColgin*
David L. McColgin, Attorney at Law
*Attorney for Defendant-Appellant*
P.O. Box 397
Charlotte, VT 05445
802-356-9863
Mccolgin.appeals@gmail.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i), and the word limit of Fed. R. App. P. 32(a)(7)(A), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 9,401 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word with 14 characters per inch and Times New Roman.

Dated: August 21, 2024

By: */s/ David L. McColgin*
David L. McColgin, Attorney at Law
*Attorney for Defendant-Appellant*